ASOCIACIÓN DE CONDÓMINOS DEL CONDOMINIO SAN ALBERTO, demandante y recurrida, *v.* SEGUROS ARANA, INC., FELIPE ARANA ROMÁN e ISRAEL ARANA ARANA, demandados; AUTORIDAD DE LAS FUENTES FLUVIALES, primer interventor, THE BANK OF NOVA SCOTIA, segundo interventor y recurrente, ROIG COMMERCIAL BANK, tercer interventor y recurrente.

*Números:* R-77-80,  *Resueltos:* 13 de septiembre de 1977
R-77-81

*Sweeting, Pons, González & Rodríguez* y *Herman Cestero Rodríguez,* abogados de Roig Commercial Bank; *Brown, Newsom & Córdova* e *Iván Díaz de Aldrey,* abogados de The Bank of Nova Scotia; *A. J. Amadeo Murga,* abogado de la demandante y recurrida; los demandados no comparecieron.

El Juez Asociado Señor Díaz Cruz emitió la opinión del Tribunal.

El Lic. Arana Arana es dueño de un condominio consistente en una "suite" de oficinas que ocupa 271 metros cuadrados en el edificio designado "Condominio San Alberto" en la esquina de Ponce de León y Condado, Parada 17, Santurce, y la cual dio en arrendamiento a la Autoridad de las Fuentes Fluviales por canon de $1,166.40 mensuales, luego aumentado a $1,232.01. A la fecha en que Arana compró dicho condominio a su antecesora en título, ya había una deuda del departamento a la administración del edificio por uso de elementos comunes, la cual continuó acumulándose y creciendo con el nuevo titular hasta alcanzar la suma de $18,947.79 para el 1° de agosto de 1976.

Arana hizo dos cesiones de los cánones de arrendamiento, a personas distintas: primero al Bank of Nova Scotia en febrero de 1975 y el mes siguiente a Roig Commercial Bank para garantizar y amortizar préstamos que había obtenido de dichas entidades financieras. La Asociación de Condóminos del "Condominio San Alberto" instó demanda en cobro de las cuotas de mantenimiento adeudadas y en aseguramiento de efectividad de sentencia obtuvo orden del tribunal para que la arrendataria Autoridad de las Fuentes Fluviales depositara en Secretaría del Tribunal los cánones según fueren venciendo y en cumplimiento de dicha orden la inquilina ha consignado un total de $14,085.89. En el pleito entre la Administración del inmueble y el titular Arana han intervenido los bancos alegando ser dueños por cesión de las rentas depositadas y como resultado de la doble cesión tienen reclamaciones de preferencia entre uno y otro. El tribunal de instan-

cia resolvió que el crédito de la Asociación de Condóminos por gastos comunales es "preferente" a la reclamación de los bancos y en seguimiento de su sentencia ordenó la entrega a la Asociación demandante de la cantidad total de rentas consignada.

Al recurrir los bancos interventores con el planteamiento central de que la cesión de cánones los convertía en dueños de lo cedido y sacaba los cánones del alcance de toda acción dirigida contra el cedente Arana; y que el Art. 40 de la Ley de la Propiedad Horizontal no comprende en sus prioridades o preferencias de créditos, el de la Administración del multipisos por cuotas de mantenimiento adeudadas, expedimos auto de revisión y hoy confirmamos, aun cuando por fundamentos distintos, la sentencia recurrida.

La Ley de la Propiedad Horizontal (Núm. 104, aprobada el 25 de junio, 1958—31 L.P.R.A. sec. 1291 y ss.)` al establecer un régimen para dicha propiedad en Puerto Rico la invistió de una subestructura económica para garantizar su subsistencia. Aspectos económicos de dicha legislación son sus preceptos disponiendo que las ganancias y los gastos comunes del inmueble se distribuirán entre los titulares de los apartamientos de acuerdo con el porcentaje que represente cada uno en el valor básico del inmueble total (Art. 20); exigiendo que el Reglamento provea sobre la manera de recaudar los fondos de los titulares, para el pago de los gastos comunes (Art. 37(d)); y que la Administración lleve un libro donde asentará los gastos de reparación de los elementos comunes (Art. 38); todas estas prescripciones en auxilio de la norma fundamental contenida en el Art. 39 [1] (31 L.P.R.A. sec. 1293c):

---

[1] La importancia vital del pago puntual de gastos comunes para la integridad y solvencia del sistema ha sido destacada al enmendarse este Art. 39 por Ley Núm. 157 de 4 de junio de 1976, cuyo nuevo texto dice:

"Artículo 39

"Los titulares de los apartamientos están obligados a contribuir pro-

"Los titulares de los apartamientos están obligados a contribuir proporcionalmente a los gastos para la administración, conservación y reparación de los elementos comunes generales del edificio y, en su caso, de los elementos comunes limitados, así

porcionalmente a los gastos para la administración, conservación y reparación de los elementos comunes generales del inmueble y, en su caso, de los elementos comunes limitados, así como a cuantos más fueren legítimamente acordados.

"Ningún titular podrá librarse de contribuir a tales gastos por renuncia al uso o disfrute de los elementos comunes, ni por abandono del apartamiento que le pertenezca.

"La cantidad proporcional con que debe contribuir cada titular a los gastos comunes se determinará, fijará e impondrá al principio de cada año calendario o fiscal y vencerá y será pagadera en plazos mensuales. Las cuotas que los titulares no cubran dentro del plazo fijado para su pago, devengarán intereses al tipo máximo legal. La falta de pago de tres o más plazos consecutivos conllevará una penalidad adicional equivalente al uno por ciento mensual del total adeudado.

"El titular moroso será requerido de pago mediante correo certificado con acuse de recibo y de no verificar el pago en el plazo de quince días se le podrá exigir por la vía judicial.

"La deuda de un titular por concepto de gastos comunes hasta la suma de quinientos (500) dólares o hasta la cantidad que represente la falta de pago de no más de seis (6) plazos, le podrá ser reclamada judicialmente con arreglo al procedimiento abreviado dispuesto bajo la Regla 60 de las de Procedimiento Civil de 1958, según enmendadas.

"Cuando se reclame la deuda por la vía judicial, el Tribunal, a instancias del demandante, decretará el embargo preventivo de los bienes del deudor o deudores, sin otro requisito que la presentación de una certificación jurada por el Presidente y por el Secretario del Consejo de Titulares, ante un notario público u otro funcionario autorizado para tomar juramentos, en que conste el acuerdo que aprobó el gasto exigible y su cuantía, así como la gestión de requerimiento de pago a que se refiere el párrafo cuarto anterior.

"Cuando el demandante así lo solicitare, en aquellos casos en que el titular moroso hubiere arrendado el apartamiento, el Tribunal podrá ordenar al arrendatario que consigne judicialmente a favor del Consejo de Titulares la cantidad total por concepto de cánones de arrendamiento, según éstos vayan venciendo, hasta que se cubra totalmente la deuda del titular.

"Aquellos titulares que adeuden tres (3) ó más plazos consecutivos, quedarán temporalmente privados de ejercer su derecho al voto en las reuniones del Consejo de Titulares hasta tanto satisfagan la deuda en su totalidad."

Con igual intención legislativa, la Ley Núm. 157 citada, al enmendar el Art. 41 (31 L.P.R.A. sec. 1293e) ordenó que la obligación del titular de un apartamiento por su parte proporcional de los gastos comunes constituya un *gravamen* sobre dicho apartamiento.

como a cuantos más fueren legítimamente acordados.

Ningún titular podrá librarse de contribuir a tales gastos por renuncia al uso o disfrute de los elementos comunes, ni por abandono del apartamiento que le pertenezca."

En su celo por evitar la evasión de pago de estas cuotas de mantenimiento y la consiguiente erosión del régimen, ordenó el legislador en el Art. 40 un crédito preferente contra cualquier titular, por su parte en los gastos comunes que sólo cede en prioridad a los créditos por contribuciones, primas de seguro e hipotecas, ninguna de cuyas excepciones es relevante a este caso, y declaró en el Art. 41 que el adquirente de un apartamiento será solidariamente responsable con el trasmitente del pago de las sumas que éste adeude hasta el momento de la transmisión. Estas disposiciones de seguridad económica del inmueble en condominio, base del bienestar, libre disfrute de su propiedad y paz de los titulares en conjunto, surten el efecto de sustraer a toda contratación aquella parte de la renta necesaria para cubrir las cuotas comunales del apartamiento arrendado. La afirmación dispersa por todo el estatuto de la inescapable dependencia económica del régimen de propiedad sobre el pago oportuno de estas cuotas es suficiente expresión legislativa para excluir como nulo y contrario a la ley y al orden público todo pacto o contrato que tienda a desviar hacia otros propósitos los dineros necesarios para sufragar los gastos comunes. (Art. 1207, Código Civil— 31 L.P.R.A. sec. 3372.) La reserva de los frutos civiles del apartamiento arrendado asegura el pago de los gastos comunes. El posible argumento de que éstos constituyen una obligación personal del titular, exigible contra todos sus bienes, choca con la realidad de que la inmensa mayoría de compradores de condominios son asalariados de clase media y que la ejecución de una sentencia contra el propio apartamiento es problemática porque siguiendo el método de financiamiento se hallará afecto a una o más hipotecas que reclaman preferencia.

■ Las cesiones de cánones, obtenidas por los Bancos como garantía adicional de préstamos facilitados a Arana, son atentatorias contra el orden económico del inmueble en condominio, con un potencial para destruir y obliterar este régimen legislativamente diseñado. Su ilegalidad es insalvable.(2) La nulidad de las cesiones de cánones de arrendamiento que comprometieron éstos en perjuicio de las cuotas de gastos comunes impagadas por los titulares del "Suite" de oficinas Núms. 421–428 en el Condominio San Alberto hace innecesario adjudicar una prelación de créditos entre el de la Asociación de Condóminos y el de los bancos cesionarios de cánones, como tampoco hay que desglosar las rentas consignadas en la cantidad de $14,085.89 toda vez que no bastan para pagar las deudas de cuotas comunes acumuladas por el titular Arana y su antecesora la corporación Seguros Arana, Inc. El convenio sobre cesión de cánones es inoperante no sólo en cuanto al importe de la mensualidad corriente de gastos comunes, sino por el restante balance afecto por su destino económico a las anteriores cuotas vencidas y acumuladas.

■ Desde que en 1958 se aprobó la Ley Núm. 104 de la Propiedad Horizontal, hay una clara política pública en Puerto Rico sobre utilización de terrenos dirigida a estimular su uso al grado máximo de densidad que se obtiene con los multipisos bajo dicho régimen. (Exposición de Motivos, Ley Núm. 157 de 4 de junio de 1976, pág. 484 y ss.) "El orden público es una concepción esencialmente relativa, y cuyos integrantes varían con los tiempos, los lugares y las Sociedades que van a determinar su aplicación. Puede definirse como el conjunto de principios de orden superior, no solamente jurídicos (públicos y privados), sino también políticos,

---

(2) Situación prevista por The Bank of Nova Scotia que en el contrato de cesión insertó cláusula de vencimiento acelerado de las obligaciones de Arana para el caso que la cesión de cánones resultase "nula, inoperante, ineficaz o inexistente en derecho."

económicos, morales y algunas veces religiosos, absolutamente obligatorios, por ser considerados esenciales para la conservación del orden social, en un pueblo y una época determinados." Bonet y Ramón, *Código Civil Comentado*, Segunda Edición (1962), pág. 950. Los contratos de cesión de cánones de arrendamiento producidos por apartamientos en condominio que absorben frutos civiles cuyo principal destino es satisfacer los gastos de conservación y mantenimiento del edificio, corrientes o acumulados, son lesivos a dicha política pública, y en consecuencia ineficaces en Derecho. *Cf. Pagán* v. *Sucn. Padilla*, 42 D.P.R. 968 (1931).

En la cuota de mantenimiento asignada a cada titular de este edificio se incluye una parte proporcional del gasto total de agua, energía eléctrica, alcantarillado y aire acondicionado de toda área privada por carecer el imueble de contadores individuales en cada departamento.[3] Esta condición imparte a dichos servicios o facilidades naturaleza análoga a la de elementos comunes generales en la clasificación de "todo lo demás que fuere racionalmente de uso común del edificio o necesario para su existencia, conservación y seguridad" *y adecuado uso y disfrute*, añadió la Ley Núm. 157 de 1976 (Art. 11 Ley, 31 L.P.R.A. sec. 1291i(g)). Si el régimen interno del inmueble le dio ese carácter de participación común y a prorrata a tan necesarios servicios, no procede el desglose y exclusión proporcional de rentas liberándolas de su destino primario y dejarlas afectas a la cesión de cánones como propone el recurrente Bank of Nova Scotia. *Confirmada.*

---

[3] Determinaciones de hecho del juez sentenciador, pág. 3, párrafo 3º.

Los Jueces Asociados Señores Rigau y Martín no intervinieron.