ASOCIACIÓN DE CONDÓMINOS CONDOMINIO CENTRO I y II, demandante y recurrente, *v.* CENTRO I, INC., CENTRO II, INC., BANCO DE AHORRO MUTUALISTA, demandados y recurridos.

*Número:* R-77-150 *Resuelto:* 19 de septiembre de 1977

186

*Figueroa & Céspedes,* abogados de la recurrente y *Miranda Cárdenas & De Corral* y *Luis F. Montijo,* abogados del Banco de Ahorro Mutualista.

El Juez Asociado Señor Díaz Cruz emitió la opinión del Tribunal.

Las corporaciones recurridas Condominio El Centro I, Inc. y Condominio El Centro II, Inc., son dueñas de 29 apartamentos con sus respectivas áreas de aparcar en los edificios llamados Centro I y Centro II, sujetos al régimen de propiedad horizontal, los cuales están dados en arrendamiento a distintos inquilinos. El 30 de septiembre de 1974 dichas corporaciones refinanciaron un préstamo que les había facilitado el demandado Banco de Ahorro Mutualista de Puerto Rico,

resultando de la operación un principal de $465,000 a pagarse en 30 años, devengando intereses al 10 1/2% anual, que las deudoras garantizaron con hipoteca, con todas las acciones emitidas por dichas corporaciones Centro I y Centro II, dadas al Banco en prenda y la garantía personal de Enrique H. y Ariel E. Gutiérrez. Como cuarta garantía del préstamo, en igual fecha las deudoras titulares de apartamentos arrendados cedieron al Banco acreedor las rentas de los mismos por los 30 años de vida del crédito hipotecario. A la fecha de esta cesión de cánones todos los inquilinos estaban al día en el pago de la renta y las corporaciones arrendadoras también lo estaban en su obligación con el consorcio de titulares por las cuotas de gastos comunes de mantenimiento. Desde que el Banco percibe la renta la ha venido aplicando como abono a su acreencia y se descontinuó el pago de dichas expensas comunes que para el 31 de agosto de 1976 alcanzaban un balance impagado de $59,475.57. La Asociación de Condóminos que administra los inmuebles Centro I y Centro II presentó demanda en abril de 1975 cobrando dichas partidas de expensas comunes tanto a las corporaciones arrendadoras como al Banco cesionario de los cánones de arrendamiento y el tribunal absolvió al Banco resolviendo que según el Art. 39 de la Ley de la Propiedad Horizontal (31 L.P.R.A. sec. 1293c) la acción procede sólo contra las dueñas titulares de los departamentos. Recurrió la Asociación de Condóminos y decidimos revisar.

 Por regla general el canon de arrendamiento de un apartamento bajo el régimen de propiedad horizontal incluye las cuotas o expensas por gastos comunales, toda vez que el no pago de éstas da lugar a una acción contra el dueño arrendador y a otra contra su inquilino en la que "el Tribunal podrá ordenar al arrendatario que consigne judicialmente a favor del Consejo de Titulares la *cantidad total* por concepto de cánones de arrendamiento, según éstos vayan venciendo, hasta que se cubra totalmente la deuda del titular."

Art. 39 según enmendado por Ley Núm. 157 de 4 de junio de 1976 (31 L.P.R.A. sec. 1293c). Esta es una opción práctica derivada de la prevención original en el Art. 39 de que "ningún titular podrá librarse de contribuir [proporcionalmente a los gastos para la administración, conservación y reparación de los elementos comunes del edificio] por renuncia al uso o disfrute de los elementos comunes, ni por abandono del apartamiento que le pertenezca." Dentro de la realidad de la estructura económica del inmueble en condominio, no se concibe el arrendamiento de un departamento sin incluir en el canon exigido del arrendatario aquella suma correspondiente al pago de gastos comunales, pues de otro modo el arrendador vendría irremisiblemente obligado a pagarlos aun cuando no se beneficiase o disfrutare el uso de su apartamiento. Fernández Martín-Granizio, *La Propiedad Horizontal en el Derecho Español*, pág. 434, Primera Ed. (1962) y págs. 608–9, Segunda Edición. La citada disposición de Ley de que ningún titular podrá librarse de contribuir a los referidos gastos es suficiente advertencia para todo el que contrate sobre un apartamiento en condominio de que las cuotas de mantenimiento del mismo son elemento contractual indispensable para la validez y eficacia del pacto, inseparables de la causa del contrato. Para el recurrido Banco de Ahorro Mutualista era inescapable que la estabilidad y administración de su convenio sobre cesión de rentas con las arrendadoras Centro I, Inc. y Centro II, Inc., dependía en alto grado del pago puntual de las cuotas de mantenimiento[1] de los departamentos arrendados.

---

[1] Ese conocimiento alcanzó expresión en la cláusula 3(b) del contrato, donde dice:

(b) "ASSIGNEE will apply the amounts received as established hereinabove as to the extent that they may be sufficient therefor to the payment of: (i) . . . (ii) . . . (iii) Insurance and maintenance charges and expenses payable by and/or assessed to the Units."

No obstante, la letra del pacto resultó hueca porque los pagos de amortización de hipoteca absorbieron las rentas sin dejar sobrante para las cuotas de mantenimiento.

■ Así enterado y advertido el banco acreedor de la interacción económica entre rentas y expensas comunes, procede resolver si la relación contractual peculiar en que voluntariamente entró con las corporaciones dueñas de los apartamentos arrendados lo colocó en la posición de un "adquirente" y por tanto responsable solidariamente con las titulares dueñas por las cuotas adeudadas.

Ordena el Art. 41 de la Ley de la Propiedad Horizontal (31 L.P.R.A. sec. 1293e) en su texto original de 1958: (²)

"El adquirente de un apartamiento será solidariamente responsable con el transmitente del pago de las sumas que éste adeude, a tenor con la sec. 1293c de este título, hasta el momento de la transmisión, sin perjuicio del derecho del adquirente a repetir contra el otro otorgante, por las cantidades que hubiese pagado como deudor solidario."

¿Fue el interés adquirido en dichos apartamentos por el cesionario de los cánones de una intensidad y relieve que pueda equipararse a un derecho propietario o de dominio compartido? (³) Analicemos el contrato. Por el extendido término de 30 años las titulares de los apartamentos arrendados ceden al Banco todos los cánones que éstos produzcan y lo facultan

---

(²) Al ser enmendado por Ley Núm. 157 de 4 de junio de 1976, la responsabilidad solidaria del adquirente fue reafirmada en el siguiente nuevo texto:

Art. 41—"La obligación del titular de un apartamiento por su parte proporcional de los gastos comunes constituirá un gravamen sobre dicho apartamiento. Por lo tanto, el adquirente voluntario de un apartamiento será solidariamente responsable con el transmitente del pago de las sumas que éste adeude, a tenor con el Artículo 39, hasta el momento de la transmisión, sin perjuicio del derecho del adquirente a repetir contra el otro otorgante, por las cantidades que hubiese pagado como deudor solidario.

"La referida obligación será exigible a quien quiera que sea titular de la propiedad que comprende el apartamiento, aun cuando el mismo no haya sido segregado e inscrito como finca filial en el Registro de la Propiedad, o enajenado a favor de persona alguna."

(³) Se da el caso en la concurrencia de propietarios con derecho a productos diferentes de una misma finca. Colin y Capitant, *Derecho Civil*, Tomo 2, Vol. 2, pág. 319 y ss., Cuarta Edición (1961), *cf. Ortiz Roberts v. Ortiz Roberts*, 103 D.P.R. 628, 631–632 (1975).

para prorrogar los contratos de arrendamiento o ejecutar nuevos contratos con inquilinos que el Banco escoja sin más limitación que la exigencia de una renta mínima de $4.10 anual por pie cuadrado de superficie; para percibir todas las rentas y dar recibo y cartas de relevo a los inquilinos; para proseguir toda acción y procedimiento para el cobro de cánones corrientes y atrasados, desahuciar los inquilinos morosos y recuperar la posesión del apartamento y para aplicar dichas rentas hasta donde alcancen, al pago de contribuciones sobre la propiedad, principal e intereses de tres hipotecas, primas de seguro y cuotas de expensas comunes asignadas a los departamentos. No quedaba ningún interés por ceder en la cosa para constituir al Banco en titular de la clase de propiedad que el Art. 281(⁴) del Código Civil (31 L.P.R.A. sec. 1112) en su inciso 2° tipifica como "el derecho de usarla o disfrutarla, o ambas cosas a la vez" aun sin poder enajenarla. Este contrato sobre cesión de cánones que además faculta al Banco cesionario por su duración de 30 años para ejercer actos por ley reservados al dueño titular, tiene un singular efecto de "desmembración de la propiedad"(⁵) como

(⁴) Art. 281, Código Civil—

"El derecho de propiedad sobre las cosas puede ser de diferentes clases:

1. La plena y entera propiedad, o sea el derecho de usar, disfrutar o enajenar las cosas.

2. El derecho de usarlas o disfrutarlas, o ambas cosas a la vez.

3. El derecho a ciertas servidumbres constituidas sobre los bienes inmuebles."

Este Artículo, adquirido de Louisiana, se aparta del rigor científico de nuestro derecho civil común, pero en cierto modo refleja la diversificación de regímenes jurídicos de la propiedad.

(⁵) "Es, en efecto, indudable que la propiedad, en el mundo actual, dista mucho de estar estructurada de modo unitario por el Derecho. La propiedad en sí misma, es decir, en su consideración general y unitaria, tiene cada vez perfiles menos acusados. El concepto de la propiedad va dejando el paso al de las diversas propiedades, ya que según sea la naturaleza del objeto y la del negocio jurídico que haya dado origen a la propiedad, tiene ésta en cada caso contenido muy diferente. La propiedad *inmobiliaria* ofrece hoy normas y problemas distintos a los de la propiedad

lo llaman Colin y Capitant, *Derecho Civil,* Tomo 2, Vol. 2, pág. 112, Cuarta Ed. (1961), *cf. De la Haba* v. *Trib. Contribuciones,* 76 D.P.R. 923, 936 (1954).

■ El concepto "adquirente" de apartamiento presente en el Art. 41, *supra,* no está necesariamente vinculado al "inmediato dominio" de la cosa a que alude el Art. 283 ([6]) del Código Civil (31 L.P.R.A. sec. 1114), ni se identifica con el de "plena y entera propiedad" que define el Art. 281 ([7]) del Código Civil en su inciso 1º. Basta obtener suficiente control del apartamiento, el derecho a usarlo o disfrutar su renta, que es una de las clases de propiedad (Art. 281, inciso 2º), para que surja la figura del "adquirente" y su vinculación en responsabilidad solidaria con el titular transmitente.

En virtud del contrato sobre cesión de cánones entre las corporaciones y el Banco este acreedor recurrido ha suplantado a las titulares dueñas de los 29 apartamentos, por el largo período de 30 años, en el gobierno y explotación económica de dichos inmuebles incluyendo la exigencia de un canon que cubra, además de los réditos de la hipoteca, las cuotas de mantenimiento. Ha habido suficiente difusión de la propiedad por los términos del contrato para convertir dicho acreedor en un "adquirente" de dichos apartamentos sometido por su libérrima voluntad a la obligación de solidaridad impuesta

mobiliaria, como también son muy diferentes, dentro de la primera, los que afectan a la propiedad *rural* o *agraria* y a la propiedad *urbana,* sin contar que no es idéntico el régimen del *subsuelo,* del *suelo,* de la *superficie,* del *aire,* de las *aguas,* de los *montes* ni es siempre el mismo el régimen de los *edificios,* el de sus *pisos* o *departamentos* y el de los *solares."* (Subrayado del autor.) Castán Tobeñas, *Derecho Civil Español, Común y Foral,* Tomo 2, Vol. 1, págs. 105–106, Ed. 10ª (1971).

([6]) Artículo 283, Código Civil—"La propiedad de una cosa reside siempre en el que tiene sobre ella el inmediato dominio y no en cualquiera otra persona, no obstante que use y disfrute de alguna manera de la cosa ajena."

([7]) Artículo 281, Código Civil—"El derecho de propiedad sobre las cosas puede ser de diferentes clases: 1. La plena y entera propiedad, o sea el derecho de usar, disfrutar o enajenar las cosas."

por el citado Art. 41 de la Ley. *Cf. Asoc. de Condóminos* v. *Naveira,* 106 D.P.R. 88 (1977).

■ Los términos del contrato son clara constancia de la intención de los contratantes de que por su duración la acreedora hipotecaria cesionaria de los cánones de arrendamiento, estuviese investida de cuanta facultad corresponde a un dueño arrendador en la administración del contrato, inclusive significativamente las de desahuciar los inquilinos morosos y modificar el canon de arrendamiento. El control económico sobre los departamentos a que advino el acreedor en cuanto concierne al arrendamiento, no es menos que el de las corporaciones dueñas, por lo que es inevitable concluir que el acreedor recurrido es un "adquirente" según conceptuada esa figura en el Art. 41 de la Ley. Al interpretar un contrato no deben perderse de vista las consecuencias prácticas y el resultado final de la eficaz operación de sus prestaciones. *Franceschi* v. *Texaco P.R., Inc.,* 103 D.P.R. 759, 763 (1975).

■ La propiedad horizontal es una exclusiva sobre los diferentes pisos o apartamentos, bajo un régimen necesario de aprovechamiento conjunto en los elementos comunes, los cuales para viabilizarlos permanecen en estado de indivisión forzosa.(8) Por ser las cuotas de mantenimiento de estos elementos comunes parte integrada permanentemente a la utilidad y valor económico de cada departamento, así dispuesto por la Ley especial que regula este tipo de propiedad, no pueden ser ignoradas en la contratación respecto a dichas unidades ni pueden los contratantes acordar términos con efecto último de evadir las responsabilidades económicas que son vida y esencia del régimen instituido y reglado por dicha Ley de la Propiedad Horizontal. La propiedad, como la libertad, aun cuando inmunes a la destrucción bajo la Constitución, no lo están de la reglamentación esencial para el bien común.

---

(8) Bugeda, *La Propiedad Horizontal,* pág. 30 y ss. (La Habana, 1954), citado por Castán Tobeñas, *Derecho Civil Español, Común y Foral,* Tomo 2, 1º, págs. 351–352, Ed. 10ª (1971).

Corresponde a cada generación elaborar por sí misma el grado de regulación. Cardozo, *The Nature of the Judicial Process*, pág. 87. *Hernández* v. *Méndez & Assoc. Dev. Corp.*, 105 D.P.R. 149 (1976). Al pesar intereses en conflicto, debe propiciarse la victoria de aquel interés fundado en la razón y más digno de protección. Gmelin, *El Método Sociológico*, 9 *Modern Legal Philosophy Series*, pág. 131.

▬ No puede el propietario separar los elementos que integran el derecho de propiedad horizontal. La transmisión del derecho no afecta en nada a las obligaciones derivadas de este régimen de propiedad. (Castán, *ibid.*, pág. 362.) La cesión de cánones de arrendamiento aquí convenida no puede operar una separación aun de orden económico entre el departamento en sí y el derecho de su titular a aprovecharse de los elementos comunes que por disposición del Art. 13 de la Ley (31 L.P.R.A. sec. 1291k) se mantendrán en indivisión forzosa, toda vez que dichos elementos comunes son parte del valor básico del inmueble. (Art. 20 de la Ley, 31 L.P.R.A. sec. 1291r.)

▬ La responsabilidad del acreedor cesionario de las rentas está además acorde con el principio declarado en el Art. 290 del Código Civil (31 L.P.R.A. sec. 1143) de que quien percibe los frutos [9] tiene la obligación de abonar los gastos hechos por un tercero para su conservación. Este precepto determina la contrapartida por la percepción de los frutos. Puede inferirse que en el curso ordinario de los negocios al fijar el canon de arrendamiento las corporaciones dueñas de los departamentos incluyeron en el mismo el costo de las expensas comunes por las que ellas, y no sus arrendatarios, son principalmente responsables. La parte del canon así reservada no debe destinarse al pago de otras obligaciones de las arrendadoras, en detrimento de la estabilidad econó-

---

[9] El Art. 289 del Código Civil (31 L.P.R.A. sec. 1142) declara frutos civiles "el alquiler de los edificios."

mica del edificio bajo régimen de propiedad horizontal. En este aspecto la cesión de cánones representa una desviación de los fondos destinados al pago de cuotas de mantenimiento, ([10]) hacia la amortización de gravámenes hipotecarios, que por constituir una seguridad adicional a la garantía real hipotecaria, a costa de la administración del inmueble, no se justifica invocando la prelación de créditos establecidos por el Art. 40 de la Ley (31 L.P.R.A. sec. 1293d), toda vez que dicho orden de prioridades se concreta llegado el momento de ejecución o realización del crédito preferente que en tal caso excluye "a todos los demás por su importe hasta donde alcance el valor del inmueble." (Art. 1827, Código Civil—31 L.P.R.A. sec. 5212.) El contrato de cesión de cánones sin hacer reserva para los gastos comunales introduce una fundamental variación en el concepto económico general de la propiedad horizontal, otorga a un acreedor preferente asegurado con hipoteca una garantía por añadidura, y en tal punto subvierte el orden económico trazado por el legislador para esta clase de propiedad y atenta contra la subsistencia misma del régimen. Es por tanto ineficaz y contraria a derecho la cesión por el titular arrendador de un apartamento sujeto al régimen de propiedad horizontal, de aquella parte del canon necesaria para cubrir las cuotas de mantenimiento o expensas comunales del departamento. *Asoc. de Condóminos* v. *Seguros Arana, Inc.*, 106 D.P.R. 133 (1977).

---

([10]) El destino de cánones para cubrir gastos de elementos comunes es corolario del principio declarado en el Art. 39 de la Ley (31 L.P.R.A. sec. 1293c) de que ningún titular podrá librarse de contribuir a tales gastos por renuncia al uso o disfrute de los elementos comunes, ni por abandono del apartamento que le pertenezca, para cuya implementación práctica expresamente dispone la enmienda introducida por Ley Núm. 157 de 4 de junio de 1976, que "en aquellos casos en que el titular moroso hubiere arrendado el apartamiento, el Tribunal podrá ordenar al arrendatario que consigne judicialmente a favor del Consejo de Titulares la cantidad total por concepto de cánones de arrendamiento, según éstos vayan venciendo hasta que se cubra totalmente la deuda del titular."

*Se dictará sentencia condenando al recurrido Banco de Ahorro Mutualista, como responsable solidario con las corporaciones arrendadoras demandadas, a pagar a la recurrente Asociación de Condóminos Condominios Centro I y II todas las cuotas de elementos comunes de los departamentos afectados y que se hallen impagadas, a partir del 30 de septiembre de 1974, sin perjuicio del derecho a repetir reservado por el Art. 41 de la Ley de la Propiedad Horizontal. Revocada.*

El Juez Asociado Señor Rigau no intervino.