ARTURO MALDONADO MORALES, demandante y recurrido, *v.* CONSEJO DE TITULARES DEL CONDOMINIO TORRE DEL MAR, demandado y recurrente.

*Número:* R-80-526     *Resuelto:* 29 de junio de 1981

428

*Carlos Roberto Vélez*, abogado del recurrente; *Dimas G. Padilla Bruno*, abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Los titulares de apartamientos del Condominio Torre del Mar se reunieron en asamblea y aprobaron una resolución. Acordaron autorizar al Consejo de Titulares del Condominio a interrumpir el suministro de agua potable de aquellos apartamientos que reflejaran deudas por cuotas de mantenimiento de elementos comunes generales del inmueble.

Como consecuencia del acuerdo, el Consejo colocó un candado en la llave de paso que permite el flujo del agua al apartamiento del demandante. El Consejo retuvo la llave.

El demandante promovió entonces un recurso de interdicto que, luego de ser visto mediante estipulación de hechos, fue declarado con lugar. Entendió la sala sentenciadora que la asamblea de titulares del condominio no tiene tal facultad. Discrepamos.

■ Existe una clara política pública en Puerto Rico dirigida a estimular la utilización de terrenos y construcción de multipisos que se rijan por el Régimen de la Propiedad Horizontal. *Arce* v. *Caribbean Home Const. Corp.*, 108 D.P.R. 225, 242 (1978); *Asoc. de Condóminos* v. *Seguros Arana*, 106 D.P.R. 133, 138 (1977); *Asoc. de Condómines* v. *Naveira*, 106 D.P.R. 88, 91 (1977). La superviviencia del régimen está amenzada por el continuo problema de los condóminos que pretenden disfrutar a plenitud de los elementos comunes generales sin hacer las aportaciones que le corresponden para su mantenimiento. 31 L.P.R.A. sec. 1291r.

Ya en *Naveira* impusimos responsabilidad por las cuotas de mantenimiento adeudadas por el dueño anterior, al adquirente del apartamiento en pública subasta. En *Asoc. de Condóminos* v. *Seguros Arana*, supra, decretamos la nulidad de la cesión de los cánones de arrendamiento hecha por el titular de ciertos apartamientos a varios bancos acreedores, por existir sobre dichos cánones un crédito preferente de la Asociación de Condóminos por concepto de los gastos de mantenimiento. Finalmente, en *Asoc. de Condóminos* v. *Centro I, Inc.*, 106 D.P.R. 185 (1977), declaramos la ineficacia de la cesión que hizo el titular de ciertos apartamientos a un banco acreedor, de aquella parte de los cánones cedidos que era necesaria para cubrir las cuotas de mantenimiento.

El presente caso nos plantea otro aspecto del problema. Si el Consejo de Titulares de un inmueble sometido al

Régimen de Propiedad Horizontal puede acordar válidamente suspender el servicio de agua potable a un condómino moroso en el pago de sus cuotas de mantenimiento, el cual mantiene un contrato de servicio de agua con la Autoridad de Acueductos y Alcantarillados.

Las cuotas que los titulares vienen obligados a satisfacer son precisamente para preservar las mejores condiciones de los elementos comunes, facilitar su uso y, sobre todo, garantizar el buen funcionamiento del régimen. Sin la aportación proporcional a las expensas del inmueble, el régimen no puede sobrevivir y se derrotaría la política pública al respecto. Sin embargo, hoy día la morosidad en el pago de las cuotas de mantenimiento parece ser endémica.

En este caso, el Consejo de Titulares recurrente ha alegado, y el titular recurrido no ha negado, que la deuda por las cuotas de mantenimeinto en dicho condominio ha ascendido a ochenta mil dólares aproximadamente, por lo que tuvo que acogerse al Capítulo 11 de la Ley de Quiebras federal. El titular recurrido tampoco ha negado que su deuda en este momento asciende a $5,301.33, excluyendo intereses y penalidad, y que su delincuencia en el pago se retrotrae a varios años. (1)

A pesar de que no paga, el demandante se beneficia de todos los elementos comunes generales, tales como el uso de los ascensores, patio, piscina, pasillos, escaleras, líneas eléctricas comunales, *tubería de agua potable comunal, tubería de desagüe comunal, bomba de agua potable, cisterna,* iluminación exterior, vestíbulo y pasillos de acceso a su apartamiento. Ahora alega que la acción del Consejo de

---

(1) El Consejo de Titulares demandó en corte al titular recurrido y obtuvo sentencia que trató de ejecutar embargándole un automóvil que luego resultó ser propiedad de la sociedad de gananciales que tiene constituida con su esposa. Por tal razón, el titular aquí recurrido demandó al Consejo de Titulares por embargo ilegal, reclamándole una suma mayor que la adeudada por él en sentencia. Dicho pleito está pendiente.

Titulares le priva de su derecho constitucional al disfrute de su propiedad. Su contención es frívola.

Recientemente, en *Centro I, Inc.*, supra, dijimos que "[l]a propiedad, como la libertad, aun cuando inmunes a la destrucción bajo la Constitución, no lo están de la reglamentación esencial para el bien común" y que "[c]orresponde a cada generación elaborar por sí misma el grado de regulación". Págs. 193–194. Y es que como expresamos en *Rivera* v. *R. Cobián Chinea & Co.*, 69 D.P.R. 672–676 (1949), ". . . no debemos perder de vista que el concepto moderno del derecho de propiedad dista mucho del que conocieron los autores de la Constitución. Hoy nadie califica de 'sagrado' el derecho a la propiedad como ocurría frecuentemente en el pasado siglo. Hoy la propiedad tiene una función social que es la de servir a la sociedad y no exclusivamente a su dueño. Como muy bien dice la apelada en su alegato: 'El nuevo concepto de la propiedad señala a ésta una función eminentemente social, que está tan lejana de aquella cerrada definición del Derecho Romano, que definía la propiedad como "el derecho de usar y de abusar de las cosas, tanto como lo permita la razón del derecho". En el nuevo concepto el privilegio individual queda supeditado al interés social.'"

La ley ha dispuesto que el Consejo de Titulares adopte aquellas medidas *necesarias* y *convenientes* para la comunidad y el mejor servicio común; incluso medidas que, como la de autos, propendan a la preservación y funcionamiento del régimen. 31 L.P.R.A. sec. 1293b. Si alguien, con sus acciones, ha puesto al borde de la parálisis al Condominio Torre del Mar es precisamente el demandante, que con su morosidad ha pretendido escamotear las aportaciones para los gastos del inmueble a los demás titulares. Es la propiedad de éstos, y no la de aquél, la que resulta mermada, al tener que cubrir con sus cuotas los gastos de todos los condóminos, inclusive los morosos. Sería el demandante quien en todo caso le estaría privando el

derecho que los demás titulares tuviesen al disfrute de su propiedad.

Entre los poderes que la ley le reconoce al Consejo de Titulares se encuentra el de "[e]ntender y decidir en los demás asuntos de interés general para la comunidad, *y acordar las medidas necesarias y convenientes para el mejor servicio común*". 31 L.P.R.A. sec. 1293b, inciso (g). Comentando idéntica disposición en el Art. 13 de la Ley de la Propiedad Horizontal española, Ventura-Traveset señala "[e]ste *interés general para la comunidad* es el límite de su actuación". Así mismo señala que las medidas que la ley autoriza a adoptar han de ser *necesarias*, es decir, "forzosa[s], imprescindible[s], que haga[n] falta sin duda alguna", *o convenientes*, esto es "[ú]til[es], oportun[as], conforme[s] y que de la medida adoptada pued[a] seguirse una consecuencia útil para el bien común de los propietarios". Ventura-Traveset, *Derecho de Propiedad Horizontal*, 3ra ed. rev., Barcelona, Ed. Bosch, 1976, págs. 323–324. Según este mismo autor, podrían incluirse en este inciso los acuerdos para "[o]bligar al cumplimiento de las obligaciones que corresponden a cada propietario", entre las cuales se halla la "[c]ontribución a gastos". *Id.*, págs. 324–325.

Pierre Poirier afirma que en algunas legislaciones se permite la suspensión de "los servicios de agua, gas, electricidad y las demás prestaciones", pero que dicha cláusula debe ser previa a su aplicación. Poirier, *La Propiedad Horizontal*, (Acdeel E. Salas, trad.) 2da ed., Buenos Aires, Ediciones Arayú, 1955, pág. 166. En Puerto Rico, aun cuando el texto de la ley no dispuso expresamente tal facultad, no hay duda de que dicha autorización está implícita en la cláusula residual de poderes que contiene el transcrito inciso (g). 31 L.P.R.A. sec. 1293b. Desde *Castle Enterprises, Inc.* v. *Registrador*, 87 D.P.R. 775, 781 (1963), dijimos, y en *Arce* v. *Caribbean Home Const. Corp.*, 108 D.P.R. 225, 243 (1978), reiteramos que la "interpretación y administración [de la Ley de la Propiedad Horizontal]

debe ser constructiva e imaginativa". La facultad de suspender los servicios derivados de los elementos generales comunes no va contra la ley, la moral ni el orden público; muy por el contrario, propende a la plena realización de la política pública involucrada en la Ley de la Propiedad Horizontal de Puerto Rico.

Alega el demandante que, de todos modos, el agua en sí no es un elemento común general, sino que es un servicio que le suministra la Autoridad de Acueductos y Alcantarillados en virtud de un contrato particular que él tiene con la agencia y por el cual paga directamente a ésta y no como parte de su cuota de mantenimiento. Por lo tanto, concluye, la interrupción del servicio de agua que hizo el Consejo de Titulares es improcedente.

■ Este argumento da correctamente por sentado la facultad que tendría el Consejo de Titulares de suspender el servicio de agua potable, si la tarifa por su consumo estuviese incluida en la cuota de mantenimiento. No obstante, en las circunstancias del presente caso, tal distinción no tiene consecuencia alguna.

El Art. 11 de la Ley de la Propiedad Horizontal, 31 L.P.R.A. sec. 1291i, en la enumeración que hace de lo que considera elementos comunes generales incluye:

> (e) Los locales o *instalaciones* de servicios centrales, como electricidad, luz, gas, *agua fría y caliente*, refrigeración, *cisternas, tanques* y *bombas de agua*, y demás similares. (Énfasis nuestro.)

Si bien es cierto que el demandante, al igual que los demás titulares, contrató individualmente con la Autoridad de Acueductos y Alcantarillados para que ésta le suministrara agua potable, ésta trae el agua hasta la tubería matriz del edificio, de ahí en adelante el líquido fluye hasta los apartamentos individuales a través de la tubería común, perteneciente a todos los condóminos, mediante las bombas de agua que la impulsan a los pisos superiores, asumiendo los condóminos el costo de mantenimiento y

limpieza de la cisterna donde se deposita el agua, de las bombas del agua, de la tubería común y de la electricidad que requiere el sistema de bombeo.

Como es sabido, las bombas de agua impulsan el agua a todos los pisos superiores de los condominios. El apartamiento del demandante queda en un tercer piso. Por lo tanto para que pueda hacerse efectiva la facultad del Consejo de Titulares en lo que respecta al uso de los elementos comunes (tubería, cisterna y bomba), sin que se afecten los condóminos que están al día en el pago de sus cuotas, precisa que se le reconozca la facultad de tomar las medidas que sean necesarias para hacer valer los derechos de todos los condóminos. La tomada en este caso resulta "necesaria" y "conveniente" como requiere Ventura-Traveset, *op. cit.*, pág. 324.

■ El demandante ha desatendido su obligación de contribuir proporcionalmente al mantenimiento de los elementos comunes generales que hacen posible que el agua "comprada" a la Autoridad de Acueductos y Alcantarillados fluya hasta su apartamiento. La única alternativa viable para impedir que el demandante se sirva de tales elementos comunes, como lo son las bombas de agua, la cisterna y la tubería, es interrumpir el flujo del líquido mediante la llave de paso correspondiente, que es parte integrante de los elementos comunes generales. Cualquier otra interpretación derrotaría el claro derecho que tiene el Consejo de Titulares de evitar que los deudores morosos se sirvan graciosamente de los elementos a cuyo mantenimiento no contribuyen, mientras éstos se deterioran y el Régimen de la Propiedad Horizontal se desintegra y arruina.

■ El demandante ha suscitado una cuestión adicional relativa a la convocatoria de la reunión en la cual se tomó el acuerdo impugnado: que no fue notificada. La dificultad con este planteamiento es que el caso fue sometido a la consideración del tribunal de instancia mediante estipu-

lación de los hechos según surgían de las alegaciones. Y en la Contestación se alega como defensa la octava: que la asamblea en que se tomó el acuerdo de cortar el suministro de agua a los condóminos morosos fue "debidamente convocada y constituida. . .".

*Por lo anteriormente expuesto se revocará la sentencia que dictó el Tribunal Superior, Sala de San Juan, y en su consecuencia se declara la demanda sin lugar.*

