EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Luis Amundaray Rodríguez<br>Querellante | Certiorari |
| Departamento de Asuntos del Consumidor<br>Peticionario | 2008 TSPR 173<br><br>175 DPR \_\_\_\_ |
| v. | |
| Junta de Directores del Condominio Castillo del Mar<br>Recurrido | |

Número del Caso: CC-2007-840

Fecha: 27 de octubre de 2008

Tribunal de Apelaciones:

        Región Judicial de San Juan Panel III

Juez Ponente:

        Hon. José A. Morales Rodríguez

Abogado de la Parte Peticionaria:

        Lcdo. José A. Maisonet Trinidad

Abogados de la Parte Recurrida:

        Lcdo. José E. Del La Cruz Skerrett
        Lcda. Johanna Rivera Cruz

Materia: Ley de Condominios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis Amundaray Rodríguez
        Querellante

Departamento de Asuntos del
Consumidor
        Peticionario                    CC-2007-840       Certiorari

        v.

Junta de Directores del
Condominio Castillo del Mar
        Recurrido

Opinión del Tribunal emitida por el Juez Presidente SEÑOR HERNÁNDEZ DENTON

San Juan, Puerto Rico, a 27 de octubre de 2008.

En esta ocasión, nos corresponde resolver si el Consejo de Titulares de un condominio tiene la facultad de imponer una cuota variable, sujeta a las fluctuaciones mensuales en el precio de energía eléctrica y agua potable, además de la cuota fija de mantenimiento por concepto de los gastos comunes ordinarios del inmueble. Por entender que dicha cuota variable es contraria a las disposiciones de la Ley de Condominios sobre la obligación de contribuir con los gastos comunes y la aprobación del presupuesto anual del inmueble, revocamos el dictamen recurrido.

I

En agosto de 2005 se realizó una asamblea extraordinaria del Consejo de Titulares del Condominio Castillo del Mar para discutir el alza en los gastos comunes relacionados al consumo de energía eléctrica y agua potable en el edificio. Según explicaron varios miembros de la Junta de Directores, este aumento excedía las cantidades presupuestadas a principios del año para cubrir tales gastos de mantenimiento.[1]

Con el fin de sufragar el déficit presupuestario que surgió como consecuencia del referido aumento, el Sr. Luis Fernández, tesorero de la Junta de Directores, sugirió dividir las cuotas de mantenimiento en dos partidas: una cantidad fija consistente de los gastos ordinarios del Condominio y otra cantidad variable que incluiría los gastos reales y fluctuantes de energía eléctrica y agua potable. Esta cuota variable se fijaría a base de las facturas mensuales por el uso de esos servicios, distribuidas en proporción al porcentaje de participación correspondiente a cada apartamiento.

_____

[1] Se desprende de los autos que dicho aumento se debió a una determinación del Departamento de Asuntos del Consumidor en la que dicha agencia concluyó que los dueños de espacios comerciales no tenían que aportar al mantenimiento del aire acondicionado central del condominio por no beneficiarse del mismo. Por su parte, también se señaló en la asamblea extraordinaria que el consumo de electricidad del condominio solía fluctuar entre $13,000 y $15,000 mensuales, pero que en los meses de junio y julio de 2005 el consumo incrementó a $23,000, lo que implicaba un aumento de 20% en la proyección del presupuesto estimado para ese año.

Así las cosas, el Dr. Diego Roca presentó una moción mediante la cual propuso la creación de la cuota variable antes descrita. Secundada la moción, el Sr. Luis Amundaray Rodríguez solicitó enmendar la moción y propuso, por su parte, el desarrollo de un plan de acción encaminado a reducir el consumo de ambos servicios, por entender que a ello se debía el aumento en la factura. La referida enmienda fue aceptada por el doctor Roca y el Consejo de Titulares aprobó la moción enmendada de manera unánime.[2]

Varios días después, la Junta de Directores notificó los acuerdos aprobados durante la asamblea extraordinaria a todos los titulares del Condominio. En dicha notificación, se detalló la estructura de la cuota mensual de mantenimiento a implementarse de la siguiente manera: 1) cargo fijo de gastos operacionales, excluyendo los gastos de energía eléctrica y agua potable; y 2) cargo variable de acuerdo al consumo real de energía eléctrica y agua.

A pesar de que la aprobación de la medida fue unánime, algunos de los titulares entendieron que la enmienda presentada por el señor Amundaray Rodríguez condicionaba la imposición de la cuota variable a la preparación de estudios y a la evaluación de posibles alternativas para la reducción del consumo de agua y electricidad en los elementos comunes. Debido a ello, el señor Amundaray

---

[2] Según la Junta de Directores, la enmienda presentada por el señor Amundaray Rodríguez se acogió como una enmienda aditiva a la moción original presentada por el doctor Roca; y no como una enmienda sustitutiva. Por tanto, la Junta alega que se mantuvo inalterada la propuesta de la cuota variable presentada por el doctor Roca.

Rodríguez envió una carta a la Junta mediante la cual impugnó la aprobación de la cuota variable por entender que no fue aprobada de forma adecuada.

En octubre de 2005 se convocó una segunda asamblea extraordinaria, en la cual se daría lectura y aprobación al Acta de la asamblea anterior. En esa reunión, el señor Amundaray Rodríguez interrumpió la discusión para impugnar la cuota variable ya que no se explicó el aumento en la misma. Sostuvo que la enmienda sometida era para realizar un estudio al respecto y no para su aprobación. En esa ocasión, y luego de explicar nuevamente el procedimiento, se aprobó el Acta con veintiséis votos a favor y doce en contra.

Posteriormente, el señor Amundaray Rodríguez presentó ante el Departamento de Asuntos del Consumidor (DACO) una querella para impugnar la imposición de la cuota variable mensual de mantenimiento. Alegó que la cuota variable no fue aprobada de forma adecuada y solicitó que se paralizara el cargo adicional de la cuota de mantenimiento para los meses de septiembre a noviembre. Además, explicó en la referida querella que intentó tomar un turno en la segunda asamblea extraordinaria para aclarar el asunto de la cuota, pero fue declarado fuera de orden por el representante legal de la Junta.

En agosto de 2006 el DACO emitió una resolución mediante la cual decretó la ilegalidad de la cuota variable. Determinó que a pesar de que dicha cuota fue

aprobada por los titulares, la Junta de Directores actuó en contravención de la Ley de Condominios ya que la mencionada cuota se impuso sobre un gasto comunal cuyo aumento debió ser contemplado dentro del presupuesto del condominio como un gasto previsible, especialmente a raíz de la determinación previa del DACO sobre la no aportación de los titulares comerciantes a los gastos relacionados con el mantenimiento del aire acondicionado central. Por tal razón, la agencia ordenó la celebración de una nueva asamblea extraordinaria a los fines de aprobar un nuevo presupuesto que contemple todos los gastos comunales, incluyendo el incremento en el costo de la electricidad. Insistió, además, en que debía establecerse una sola cuota fija que contemple todos los gastos previsibles, incluyendo las fluctuaciones en el precio de los mencionados servicios.

Inconforme, la Junta de Directores acudió al Tribunal de Apelaciones. El foro apelativo revocó la resolución del DACO y concluyó que la cuota variable era una alternativa creativa que atendía el problema de las fluctuaciones en el costo de los servicios. Asimismo, el foro apelativo expresó que el DACO no citó autoridades legales para fundamentar su determinación. Por tal razón, concluyó que dicha agencia actuó de manera arbitraria al decretar la ilegalidad del acuerdo tomado por el Consejo de Titulares.

Por no estar de acuerdo con dicho dictamen, el DACO acude ante este Tribunal. En esencia, dicha agencia

administrativa aduce que no abusó de su discreción al decretar la ilegalidad de la cuota variable por ser contraria a la Ley de Condominios, Ley Núm. 103 del 5 de abril de 2003, 31 L.P.R.A. sec. 1291 *et seq.* Arguye, además, que no es una sana práctica administrativa establecer dos cuotas, una fija y otra variable, pues entiende que dicha situación promueve la incertidumbre entre los titulares en cuanto a la suma que tendrán que pagar de mes a mes. Por su parte, la Junta de Directores alega que el DACO actuó de manera arbitraria y caprichosa al declarar ilegal la mencionada cuota, pues entiende que el Consejo de Titulares actuó conforme a los deberes y facultades que le concede el referido estatuto al aprobar la misma.

Examinado el recurso, expedimos el auto. Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

Sabido es que la Ley de Condominios establece la obligación de todo titular de un apartamiento de contribuir con los gastos comunes para el adecuado sostenimiento del inmueble. A su vez, dicho estatuto especifica que la cuota de mantenimiento correspondiente se precisará con arreglo al porcentaje de participación fijado a su apartamiento en la escritura de constitución del régimen. Art. 15 (f) de la Ley de Condominios, 31 L.P.R.A. sec. 1291m. Véanse, además, Michel J. Godreau, El Condominio, Ediciones Situm, San

Juan, 1992, pág. 163; Manuel Pons González y Miguel A. del Arco Torres, Régimen Jurídico de la Propiedad Horizontal, Editorial Comares, Granada, 1995, pág. 311.

Cónsono con ello, hemos expresado reiteradamente que el principio de contribución proporcional a dichos gastos es medular en el esquema establecido por la Ley de Condominios. En ese sentido, hemos señalado que "las cuotas que los titulares vienen obligados a satisfacer son precisamente para preservar las mejores condiciones de los elementos comunes, facilitar su uso y, sobre todo, garantizar el buen funcionamiento del régimen. Sin la aportación proporcional a las expensas del inmueble, el régimen no puede sobrevivir y se derrotaría la política pública al respecto." Asoc. de Cond. Balcones de Santa Maria v. Los Frailes, S.E. et al., 154 D.P.R. 800, 815 (2001); Álvarez Cintrón v. J. Dir. Cond. Villa Caparra, 140 D.P.R. 763 (1996); Maldonado v. Consejo de Titulares, 111 D.P.R. 427 (1981).

En particular, el Artículo 38-D (b) de la referida Ley de Condominios dispone que la Junta de Directores constituye el órgano ejecutivo de la comunidad de titulares, el cual tiene el deber de "[p]reparar con la debida antelación y someter al Consejo el presupuesto anual de **gastos previsibles y de ingresos**, fijando la contribución proporcional que corresponda a cada titular". 31 L.P.R.A. sec. 1293b-4. (Énfasis nuestro). Conforme a ello, el propio estatuto dispone que el Consejo de

Titulares se reunirá por lo menos una vez al año para aprobar los presupuestos y cuentas del próximo año fiscal. 31 L.P.R.A. sec. 1293b-1.

Comúnmente, la reunión que se celebra para aprobar el presupuesto preparado por la Junta de Directores constituye la asamblea anual ordinaria del Consejo de Titulares que ordena el artículo antes citado. De otra parte, el Artículo 39 de la mencionada ley delimita claramente la autoridad del Consejo al respecto, pues dispone que "[l]a cantidad proporcional con que debe contribuir cada titular a los gastos comunes **se determinará, fijará e impondrá** al principio de cada año calendario o fiscal y vencerá y será pagadera en plazos mensuales [...]". (Énfasis nuestro). 31 L.P.R.A. sec. 1293c.

Por otro lado, varias disposiciones de la Ley de Condominios buscan desalentar el atraso en el pago de las cuotas de mantenimiento y fomentan la diligencia respecto a los asuntos relacionados con la administración y conservación de los elementos comunes. Por ejemplo, el Artículo 39 autoriza al Consejo de Titulares a aprobar, mediante enmienda al Reglamento del condominio, una penalidad de 10% a los titulares que no hayan realizado su pago correspondiente luego de quince días del plazo fijado para ello, así como la acumulación de intereses y otras penalidades adicionales por la morosidad en el pago de las cuotas. 31 L.P.R.A. sec. 1293c. Dicho artículo también dispone que aquellos titulares que adeuden tres o más

plazos de cuotas quedarán privados de su derecho al voto en las reuniones del Consejo de Titulares, incluidos aquellos asuntos que requieran el consentimiento unánime. *Id.* Asimismo, el Artículo 38(i) permite a la Junta de Directores suspender el servicio de agua y electricidad, así como cualquier otro servicio recibido por medio de los elementos comunes generales, por el atraso de dos mensualidades consecutivas. 31 L.P.R.A. 1293b.

De todo lo anterior se desprende que la Ley de Condominios reconoce que el pago diligente de las cuotas de mantenimiento es fundamental para la sana administración y el funcionamiento adecuado de los elementos comunes. Por consiguiente, resulta sumamente importante que los titulares discutan y aprueben con antelación las cuantías proyectadas para el mantenimiento de esos elementos al comienzo de cada año fiscal o calendario. Más aún, es evidente que el referido estatuto ordena al Consejo de Titulares determinar de manera fija y estable la cuantía que se compromete a pagar cada apartamiento proporcionalmente en la asamblea anual celebrada para tales propósitos. Véase Artículo 39, *supra.*

En el caso de autos, el DACO determinó que la práctica de imponer una cuota fija y otra variable es contraria a las disposiciones reseñadas de la Ley de Condominios. No obstante, el foro apelativo revocó esa determinación por entender que la medida en controversia era un mecanismo creativo para atender la crisis fiscal del Condominio. En

vista de ello, y a la luz del marco normativo antes expuesto, debemos resolver si la Ley de Condominios autoriza al Consejo de Titulares del Condominio Castillo del Mar a aprobar una cuota de mantenimiento fija y otra variable, sujeta a las fluctuaciones mensuales en el costo de los servicios de energía eléctrica y agua potable. Veamos.

### III.

En primer lugar, nótese que el Artículo 38-D(b) de la Ley de Condominios, *supra*, ordena a la Junta de Directores preparar un presupuesto anual a base de los gastos **previsibles**, el cual posteriormente debe ser considerado por el Consejo de Titulares. Indudablemente, el requisito de previsibilidad aplica tanto a los costos de servicios de electricidad y de agua potable como a los demás gastos comunes del condominio.

En el presente caso, el aumento en los servicios de energía eléctrica era previsible para la Junta de Directores. Al momento de aprobarse el presupuesto para el año fiscal 2005 se conocía que iba a ocurrir un alza significativa en tales servicios, pues el DACO recientemente había emitido una resolución en la cual se eximía a los apartamientos comerciales del Condominio de contribuir a los gastos relacionados con el aire acondicionado central del inmueble. Más aún, el criterio de previsibilidad no requiere que se precise matemáticamente en el presupuesto la cuantía exacta del aumento en tales

servicios, sino que se tome en consideración la posibilidad de que ocurran tales fluctuaciones en el mercado al aprobar el mismo.

Por tanto, somos del criterio que la Junta de Directores tenía la obligación de presentar ante el Consejo de Titulares del Condominio un presupuesto que incluyera entre los gastos previsibles el aumento en el costo de los mencionados servicios para los titulares, tomando en consideración tanto las fluctuaciones del mercado como los efectos económicos de la determinación reciente del DACO antes mencionada. Por mandato de la propia Ley de Condominios, las cuotas de mantenimiento deben establecerse a base de una cuantía exacta que se fije y determine al principio de cada año y será pagadera en plazos mensuales. 31 L.P.R.A. sec. 1293c.

Ciertamente, la imposición de una cuantía fija y otra variable podría menoscabar los derechos propietarios de los titulares, ya que la falta de diligencia en el pago de las cuotas puede resultar en la privación del derecho al voto o de los servicios del titular moroso. Como consecuencia, una cuota variable sujeta a varias contingencias no contempladas en el presupuesto aprobado a principios del año podría dar pie a ciertas injusticias y arbitrariedades en su implementación.

En atención a lo anterior, concluimos que la Junta de Directores del Condominio Castillo del Mar incidió al no proponer un presupuesto adecuado que contemplara el aumento

de varios gastos comunes que, en general, eran previsibles. Más aún, cometió un grave error al proponer la aprobación de una cuota fija y otra variable para subsanar el problema ocasionado por el presupuesto deficiente que se aprobó a principios del año. Claramente, la Ley de Condominios contempla únicamente la aprobación de una sola cuota de mantenimiento fija y predeterminada para cubrir los gastos previsibles del año fiscal venidero. Asimismo, la fijación precisa de dicha cuota debe servir como un aviso adecuado a los condóminos de los gastos que tendrán que incurrir en el próximo año, concediéndoles la oportunidad de preparar su presupuesto anual para que puedan prever y evitar las consecuencias negativas de la morosidad o del incumplimiento con la obligación de pagar las cuotas que impone la referida ley.

Por otro lado, nos parece razonable la interpretación del DACO en este caso en cuanto a que un remedio adecuado que tenía la Junta y el Consejo de Titulares para atender la crisis fiscal del Condominio era proyectar el costo mensual promedio de los servicios y decretar un alza en la cuota de mantenimiento que podría haberse aplicado de forma gradual a través del año. Es decir, nada impide que en una asamblea extraordinaria, el Consejo de Titulares apruebe un aumento prospectivo en las cuotas de mantenimiento para atender una situación extraordinaria como la del presente caso, toda vez que se fije y predetermine de antemano el monto preciso que conllevará esa sola cuota desde ese mes

en adelante.[3] Del mismo modo, y como otra alternativa adecuada, el alza de la cuota podría estar sujeta a revisión en futuras asambleas, a base de proyecciones razonables en cuanto a los aumentos previsibles de dichos gastos. Ello daría la oportunidad de implementar planes de acción para la reducción del consumo de energía eléctrica y otras medidas creativas para atender los problemas fiscales del Condominio.

Por último, es menester señalar que la propia Ley de Condominios contempla la imposición de una derrama o hacer retiros del fondo de reserva para toda obra urgente no prevista en el presupuesto anual de inmueble. Art. 38(d)(2), 31 L.P.R.A. sec. 1293b. Si la ejecución de dicha obra urgente requiere el 10% o más de dicho presupuesto o la imposición de una derrama, será necesario que ésta sea aprobada por una mayoría del Consejo de Titulares debidamente convocado para ello en una asamblea extraordinaria, la cual puede convocarse en tales supuestos extraordinarios dentro del plazo de 72 horas sin necesidad de hacer una segunda convocatoria. *Id.*

En lo pertinente al caso de autos, el referido estatuto incluye en su definición de obra urgente toda obra necesaria para la restitución de los servicios esenciales, tales como el suministro de agua o de electricidad. *Id.*

---

[3] De hecho, la Ley de Condominios establece que hasta la propia Junta de Directores tiene la facultad de aumentar o disminuir las cuotas para gastos comunes, sujeto ello a la revocación del Consejo de Titulares. Art. 38-D (j), 31 L.P.R.A. 1293b-4. Véase además, Michel Godreau, El Condominio, *supra*, pág. 137.

Véase además, Michel Godreau, La Nueva Ley de Condominios, Editorial Dictum, 2003, págs. 57-58. Por consiguiente, es razonable concluir que el Consejo de Titulares también tenía disponible el mecanismo de aprobación de obras urgentes para sufragar los servicios de agua y electricidad, siempre y cuando el déficit presupuestario del Condominio impidiese que se pagaran a tiempo dichos servicios y se apercibiera a la Junta que la morosidad en el pago de estos gastos comunes conllevaría la suspensión de los mismos. Al aprobar una derrama para tales propósitos preventivos –la cual también puede ser pagadera en plazos mensuales– se subsanaría temporeramente la crisis financiera que surgió como resultado del presupuesto deficiente y, como consecuencia, se evitaría la suspensión del suministro de estos servicios esenciales.

**IV.**

Por todo lo antes expuesto, revocamos la sentencia dictada por el Tribunal de Apelaciones y, en consecuencia, devolvemos el caso al DACO para que continúe con los trámites ulteriores conforme a lo aquí resuelto.

Se dictará Sentencia de conformidad.

Federico Hernández Denton
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis Amundaray Rodríguez
    Querellante

Departamento de Asuntos del
Consumidor
    Peticionario              CC-2007-840      Certiorari

           v.

Junta de Directores del
Condominio Castillo del Mar
    Recurrido


SENTENCIA


San Juan, Puerto Rico, a 27 de octubre de 2008.

       Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la sentencia dictada por el Tribunal de Apelaciones y, en consecuencia, se devuelve el caso al DACO para que continúe con los trámites ulteriores conforme a lo aquí resuelto.

       Así lo pronuncia y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez concurre con el resultado sin opinión escrita.


                     Aida Ileana Oquendo Graulau
                   Secretaria del Tribunal Supremo