Deogracia Álvarez Cintrón, querellante, *v.* Junta de Directores del Condominio Villa Caparra Executive, querellada y recurrida; Departamento de Asuntos del Consumidor, peticionario.

Número: CE-93-755          *Resuelto:* 17 de mayo de 1996

*Ana María López Erquicia*, abogada del Departamento de Asuntos del Consumidor, peticionario; *Awilda Enid López*, abogada de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El peticionario, mediante recurso de *certiorari*, nos solicita que revisemos una *sentencia* dictada por el entonces Tribunal Superior de Puerto Rico, Sala de San Juan, que *revocó y dejó sin efecto* una resolución y orden del Departamento de Asuntos del Consumidor (en adelante D.A.Co.). Mediante la referida resolución, el D.A.Co. había determinado que la acción del Consejo de Titulares del Condominio Villa Caparra Executive, de relevar, de manera proporcional, a los miembros de la Junta de Directores del pago de las cuotas de mantenimiento, como remuneración por los servicios prestados en calidad de directores de dicha comunidad de propietarios, era nula por contravenir ésta las disposiciones de la Ley de la Propiedad Horizontal.

I

El 19 de diciembre de 1988, el Consejo de Titulares del Condominio Villa Caparra Executive, inmueble sometido al régimen de propiedad horizontal, reunido en asamblea

debidamente convocada por su junta de directores, aprobó una medida dirigida a "remunerar" a los miembros de la referida junta por sus servicios mediante una *exención o relevo del pago* de su cuota de mantenimiento. Dicha medida se hizo formar parte de las "minutas" de la mencionada asamblea y fue circulada *a todos los titulares* de conformidad con lo establecido por el Art. 38-C de la Ley de la Propiedad Horizontal, 31 L.P.R.A. sec. 1293b-3.

La medida adoptada por el Consejo de Titulares del Condominio Villa Caparra Executive establece que el presidente de la junta de directores tendrá una exención del cien por ciento (100%) del pago de la cuota de mantenimiento *por el tiempo que ocupe el referido cargo*. Así mismo, y sujeto a la misma condición, el secretario y el tesorero estarán exentos en un cincuenta por ciento (50%) y el vicepresidente y los vocales en un veinticinco por ciento (25%).

El 21 de noviembre de 1991, el condómino Deogracia Álvarez Cintrón (en adelante Álvarez Cintrón) presentó ante el D.A.Co. una querella contra la junta de directores del Condominio Villa Caparra Executive alegando que la mencionada junta había aprobado una póliza de seguro para el Condominio sin la aprobación de los titulares; que los miembros de la Junta se negaron a entregarle copia de aquellas "minutas" y memorandos que evidencian el consentimiento de los titulares para la adquisición del mencionado seguro; *y que se había beneficiado a los miembros de la Junta de Directores eximiéndoles del pago de las cuotas de mantenimiento.*

Luego de varios trámites, el 24 de agosto de 1992 D.A.Co. emitió una resolución administrativa desestimando la querella en cuanto a la aprobación de la póliza de seguro y la negativa de la Junta de Directores del mencionado condominio de suministrarle copia al querellante de las minutas del Consejo de Titulares, ello por razón de que el querellante no compareció ante dicho foro a sustentar su

posición. *Ahora bien*, en cuanto a la exención concedida a los miembros de la Junta de Directores relativa al pago de la cuota de mantenimiento, resolvió el D.A.Co. que el acuerdo a tales fines *era nulo* por contravenir el mismo las disposiciones de la Ley de la Propiedad Horizontal. En consecuencia, ordenó a los miembros de la mencionada Junta de Directores a pagar todas las cuotas adeudadas y a realizar los trámites legales necesarios para recobrar las cuotas no pagadas por miembros de juntas anteriores que disfrutaron de la mencionada exención.

Oportunamente, tanto la Junta de Directores del Condominio como el condómino querellante, presentaron sendas mociones de reconsideración ante dicho organismo administrativo. El D.A.Co. emitió una resolución declarando no ha lugar la moción de reconsideración presentada por la Junta. En cuanto a la moción del condómino, el D.A.Co. modificó la resolución emitida a los efectos de que la Junta de Directores permitiera, dentro del plazo provisto, al querellante Álvarez Cintrón y a cualquier otro titular que así lo solicitase, el examen de los libros y documentos del Condominio.

El 14 de enero de 1993, la Junta de Directores del Condominio Villa Caparra Executive presentó un recurso de revisión judicial ante el antiguo Tribunal Superior de Puerto Rico, Sala de San Juan, cuestionando la determinación del D.A.Co. en relación a la exención del pago de las cuotas de mantenimiento. Dicho foro judicial, mediante sentencia dictada el 22 de noviembre de 1993, *revocó* la decisión del D.A.Co. Resolvió que la acción del Consejo de Titulares no constituye una exención, como tal, a los oficiales de la Junta de Directores del pago de sus cuotas de mantenimiento en el sentido que lo contempla la Ley de la Propiedad Horizontal, sino que dicha acción lo que realmente hace es fijarle una compensación que es igual a un determinado por ciento de lo que le corresponde pagar por cuotas de mantenimiento; tratándose, conforme el foro de

instancia, de una forma de pago por los servicios prestados y no de una exoneración del pago de sus cuotas.

Inconforme, el 8 de diciembre de 1993, el D.A.Co. acudió en *certiorari* ante este Tribunal. En el recurso que a esos efectos presentara, le imputa al foro de instancia haber errado:

A. ... al obviar el claro y expreso mandato de la Ley de Propiedad Horizontal y darle una interpretación propia y personal a la misma, aún (sic) a pesar de que el Departamento de Asuntos del Consumidor es la Agencia con la autoridad para establecer la política pública a seguir en estos casos. Petición, pág. 4.

Expedimos el auto radicado. Habiendo comparecido las partes, y estando en posición de resolver el recurso, procedemos a así hacerlo.

## II

Como es sabido, sobre los miembros de la Junta de Directores de una comunidad sometida al Régimen de la Propiedad Horizontal recae la gran responsabilidad de actuar y tomar las decisiones que sean necesarias para una sana administración en beneficio de dicha comunidad de propietarios. *Ello requiere compromiso y dedicación, pero, más aun, requiere que éstos estén en disposición de dedicarle el tiempo necesario para cumplir cabalmente con las responsabilidades de su cargo.* Por tal razón, algunas de las comunidades sometidas al mencionado régimen de propiedad horizontal, han optado por proveer una *remuneración económica* a los miembros de sus respectivas juntas mientras se desempeñan como tales; ello, como *incentivo* para atraer a personas capacitadas, en mayor grado, para ocupar tales posiciones. Como certeramente se ha expresado:

Serving on the board of a condominium association may be extremely rewarding for some while a nightmare for others. Although they are volunteers, board members have the respon-

sibility for making decisions that will affect millions of dollars in common property. From an economic, social and legal point of view, efficient handling of condominium business is imperative.

Because board members frequently bear the brunt of the unit owners' frustrations and problems with community living, many competent individuals will not serve. Allowing unqualified individuals to hold the office, however, may put the condominium and unit owners' assets at risk. The success of condominium government depends upon finding qualified individuals willing to volunteer their time and energy, and to deal with the complications that are an integral part of that job. G.A. Poliakoff, *The Law of Condominium Operations*, Illinois, Ed. Callaghan & Co., 1988, Vol. I, Cap. 2, Sec. 2:01, pág. 3.

Como cuestión de hecho, nuestro ordenamiento jurídico *no* prohíbe la antes mencionada práctica; de hecho, la autoriza. A esos efectos, el Art. 37 de la Ley de la Propiedad Horizontal, 31 L.P.R.A. sec. 1293a, en síntesis y en lo pertinente, dispone que el reglamento del inmueble sometido al régimen de la propiedad horizontal proveerá obligatoriamente, entre otros extremos, la forma de administración, indicándose si estará a cargo de un director o de una junta de directores con expresión de sus facultades, remoción y, en su caso, remuneración.

De conformidad con dicho diseño legislativo, la Sec. 11 del Art. III del Reglamento del Condominio Villa Caparra Executive dispone:

*Section 11. Compensation.*
Members of the Board of Administration *shall not* receive any compensation for their services *unless authorized and fixed by the Council of Co-Owners at a duly constituted and convened meeting.* The Board of Administration may authorize reimbursement to members thereof for expenses actually incurred on behalf of, or advances made to, the Condominium. (Énfasis suplido.)

Ahora bien, la Ley de la Propiedad Horizontal, en su Art. 15(e), 31 L.P.R.A. sec. 1291m(e), establece que *todo* titular deberá contribuir, con arreglo al porcentaje de participación fijado a su apartamiento en la escritura de cons-

titución, a los gastos comunes para el adecuado sostenimiento del inmueble, sus servicios, tributos, cargas y responsabilidades. Igualmente, el Art. 39 (31 L.P.R.A. sec. 1293c), dispone, en lo pertinente, que "[l]os titulares de los apartamientos *están obligados* a contribuir proporcionalmente a los gastos para la administración, conservación y reparación de los elementos comunes generales del inmueble y, en su caso, de los elementos comunes limitados, así como a cuantos más fueren legítimamente acordados". (Énfasis suplido.) Así también, dispone que "[n]ingún titular podrá librarse de contribuir a tales gastos *por renuncia al uso o disfrute de los elementos comunes, ni por abandono del apartamiento que le pertenezca*". (Énfasis suplido.)

En ocasiones anteriores, nos hemos expresado sobre la *función e importancia* que tienen las cuotas de mantenimiento en un inmueble sometido al régimen de la propiedad horizontal. En ese sentido, señalamos en *Maldonado v. Consejo de Titulares*, 111 D.P.R. 427, 430 (1981), que:

> Las cuotas que los titulares vienen obligados a satisfacer son precisamente para preservar las mejores condiciones de los elementos comunes, facilitar su uso y, sobre todo, garantizar el buen funcionamiento del régimen. Sin la aportación proporcional a las expensas del inmueble, el régimen no puede sobrevivir y se derrotaría la política pública al respecto.

La parte recurrente sostiene que la actuación del Consejo de Titulares del Condominio Villa Caparra Executive, de eximir en la proporción acordada a los miembros de la Junta de Directores del pago de sus respectivas cuotas de mantenimiento, infringe las antes mencionadas disposiciones de la Ley de la Propiedad Horizontal. Específicamente alega que ningún titular puede liberarse de manera alguna, ni bajo cualquier pretexto, de contribuir al pago de las cuotas de mantenimiento y que lo acordado por el Consejo de Titulares en el caso que nos ocupa es, en consecuencia, nulo *ab initio*. Aun cuando dicha parte reconoce que el Consejo de Titulares de un inmueble sometido al Régimen

de la Propiedad Horizontal puede, como regla general y siempre que haya sido facultado para ello, autorizar la remuneración de los servicios prestados por los miembros de la Junta de Directores, sostiene que ello no puede hacerse mediante la exención del pago de las cuotas de mantenimiento. *No le asiste la razón.*

■ Estamos contestes con el ilustrado foro de instancia en que, la determinación del Consejo de Titulares de relevar del pago de las cuotas de mantenimiento, totalmente al presidente y parcialmente al resto de los miembros de la Junta de Directores, es, en cierto modo, *equivalente* a fijarle un sueldo a la Junta de Directores por su trabajo en beneficio de todos los titulares, según autorizado por el reglamento del condominio en cuestión. *Se trata, realmente y desde un punto de vista práctico, no de una exoneración del pago de cuotas de mantenimiento, sino de una conversión de las mismas.*([1])

■ Debemos tener presente que la interpretación y administración de la Ley de la Propiedad Horizontal *debe ser constructiva e imaginativa.* Véase *Maldonado v. Consejo de Titulares,* ante. Somos del criterio que, precisamente, nos enfrentamos a una *actuación creativa* de parte de un consejo de titulares de un edificio sometido al régimen de dicha ley. En lugar de fijarle un sueldo a varios de sus directores, *relevan* a éstos del pago de un determinado por ciento de la cuota de mantenimiento a ser pagada por ellos; acción que tiene el mismo efecto o consecuencia para el condominio desde un punto de vista económico. El Consejo de Titulares de un condominio en particular —autorizado por el reglamento del mismo a remunerar a los miembros de su junta de directores— *podrá, naturalmente, revisar*

---

([1]) Analizándolo desde otro punto de vista, téngase presente que cuando el deudor y el acreedor se deban recíprocamente una cosa de la misma especie y calidad, habrá compensación. 31 L.P.R.A. sec. 3221. Ello significa que las partes voluntariamente pueden válidamente acordar compensar sus respectivas deudas, pudiendo ser la compensación acordada total o parcial.

*anualmente dicha forma de pago*; decisión que, en la situación específica hoy ante nuestra consideración, tomará en cuenta la cantidad de·dinero que se le quiere otorgar por los servicios prestados a cada director y la cuota de mantenimiento en particular que éste viene en la obligación de contribuir, lo que, naturalmente, determinará el por ciento de relevo que se fijará a esos fines.

■ A nuestro juicio, las disposiciones de los Arts. 15(e) y 39 de la Ley de la Propiedad Horizontal, antes citados, están dirigidos a aquellos titulares que, *arbitraria y caprichosamente*, intentan liberarse de la obligación de pagar las cuotas de mantenimiento que le han sido asignadas y no a acuerdos válidos adoptados por el Consejo de Titulares de un condominio en particular que redundan en beneficio de la comunidad en general y que, realmente, *no* conllevan una exoneración del pago de las referidas cuotas *y sí* una remuneración por los excelentes servicios que éstos prestan en beneficio de todos los condómines.

Finalmente, debemos señalar que, si bien es cierto que, de ordinario, la interpretación administrativa de un estatuto por el organismo encargado de velar por su cumplimiento merece gran respeto y deferencia por los tribunales, *A.R.P.E. v. Ozores Pérez*, 116 D.P.R. 816 (1986),([2]) ello *no* significa que sus determinaciones tengan credenciales de inmunidad, frente al crisol judicial, cuando una parte acude al tribunal a cuestionar sus actuaciones.

*Se dictará sentencia de conformidad.*

La Juez Asociada Señora Naveira de Rodón emitió un voto particular de conformidad. El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión

---

([2]) La Ley de la Propiedad Horizontal concedió jurisdicción exclusiva al Departamento de Asuntos del Consumidor para entender en acciones de impugnación de los acuerdos del Consejo de Titulares relacionados con la administración de inmuebles sometidos al régimen que comprendan por lo menos un (1) apartamento destinado a vivienda. 31 L.P.R.A. sec. 1294.

escrita. El Juez Asociado Señor Corrada Del Río no intervino.

## — O —

Voto particular de conformidad emitido por la Juez Asociada Señora Naveira de Rodón.

### I

En la opinión que hoy se emite, el Tribunal decide que el Consejo de Titulares de un inmueble sometido al régimen de propiedad horizontal puede, "[e]n lugar de fijarle un sueldo a varios de sus directores, rele[var] a éstos del pago de un determinado por ciento de la cuota de mantenimiento a ser pagada por ellos ...". (Énfasis en el original suprimido.) Opinión mayoritaria, pág. 770. Por entender que lo que hoy se decide no es una carta en blanco para las juntas de directores, y que se encuentra limitado y supeditado a la consecución de los propósitos de la Ley de la Propiedad Horizontal, Ley Núm. 104 de 25 de junio de 1958, según enmendada, 31 L.P.R.A. sec. 1291 *et seq.*,[1] he dado mi conformidad a la opinión.

### II

Un análisis integral de la Ley nos permite concluir que entre sus propósitos cardinales se encuentra asegurar la adecuada y eficiente administración de los inmuebles sometidos al régimen de propiedad horizontal. Esto resulta necesario para asegurar, a su vez, el cumplimiento con la política pública del Estado "sobre utilización de terrenos ... que se dirige a estimular que las familias puertorriqueñas

---

[1] Toda referencia subsiguiente a "la Ley" se entenderá relativa a la Ley de la Propiedad Horizontal, a no ser que otra cosa se especifique.

residan en proyectos multi-familiares".(²) Entre los meca-
nismos que incorpora la Ley para la consecución de este
fin, cabe destacar aquéllos contenidos en las disposiciones
relativas a los órganos regentes de los inmuebles y aque-
llas tocantes a las cuotas de mantenimiento que vienen
obligados a satisfacer todos los titulares de los apartamien-
tos del inmueble, en atención a los criterios que sobre el
particular establece la Ley.(³) La solución de la controver-
sia ante nuestra consideración amerita un ponderado aná-
lisis de las referidas disposiciones, prestando particular
atención al reseñado propósito de la Ley de propiciar la
adecuada y eficaz administración de los inmuebles sujetos
al régimen de propiedad horizontal para el beneficio de to-
dos sus titulares. Porque reconozco que la aplicación incon-
dicionada de la norma que se crea podría resultar peligrosa
y, en algunos casos, entorpecer la adecuada administración
del condominio en detrimento de sus titulares —si se en-
tiende que la misma es una absoluta con el propósito de
hacer claro que a esta norma le aplican los criterios de
razonabilidad— es que suscribo el presente voto particular
de conformidad.

## III

Se nos solicita que revoquemos una sentencia del Tribu-
nal de Primera Instancia que, a su vez, revocó una deter-
minación final del Departamento de Asuntos del Consumi-
dor (en adelante D.A.Co.), que decretó la nulidad de una

---

(²) Exposición de Motivos de la Ley Núm. 157 de 4 de junio de 1976 (1979 Leyes
de Puerto Rico 485), enmendatoria de la Ley. Véanse, además: *Maldonado v. Consejo
de Titulares*, 111 D.P.R. 427, 429 (1981), y F. Hernández Denton, *La Ley de la Pro-
piedad Horizontal—un análisis de las enmiendas de 1976*, 44 Rev. C. Abo. P.R. 257
(1983).

(³) En relación con los órganos regentes de los inmuebles, los Arts. 38–38-E de la
Ley, 31 L.P.R.A. secs. 1293b – 1293b-5, disponen lo relativo a los deberes y las facul-
tades del Consejo de Titulares y del Director o la Junta de Directores del condominio.
Por otra parte, lo relacionado al pago de las cuotas de mantenimiento está dispuesto
en los Arts. 15(e) y 39 de la Ley, 31 L.P.R.A. secs. 1291m(e) y 1293c, respectivamente.

resolución aprobada por el Consejo de Titulares del Condominio Villa Caparra Executive (en adelante el Condominio).

En Asamblea ordinaria celebrada el 19 de diciembre de 1988, el Consejo de Titulares del Condominio (en adelante el Consejo) aprobó la resolución objeto de impugnación y concedió una remuneración a algunos miembros de la Junta de Directores (en adelante la Junta). El esquema adoptado por el Consejo para remunerar a los miembros de la Junta releva a éstos de pagar, total o parcialmente, la cuota de mantenimiento que deben satisfacer como titulares de un apartamiento en el inmueble; al Presidente de la Junta se le exime en un cien por ciento (100%); al Tesorero y al Secretario se les exime de pagar el cincuenta por ciento (50%) de sus respectivas cuotas; mientras que al Vice Presidente y a los Vocales se les confiere una exención de veinticinco por ciento (25%).

El Sr. Deogracia Álvarez Cintrón, titular de uno de los apartamientos del Condominio, impugnó en D.A.Co. la referida actuación del Consejo.[4] D.A.Co. emitió una resolución en la que determinó que el esquema de remuneración adoptado por el Consejo del Condominio era nulo por contravenir las disposiciones de los Arts. 15(e) y 39 de la Ley, 31 L.P.R.A. secs. 1291m(e) y 1293c,[5] respectivamente. En

---

[4] Simultáneamente cuestionó otras actuaciones de la Junta de Directores que, por no estar ante nuestra consideración, no discutimos.

[5] En lo pertinente, los referidos artículos de la Ley disponen como sigue:
Art. 15(e):
"El uso y disfrute de cada apartamiento estará sometido a las reglas siguientes:

"(e) Todo titular deberá contribuir con arreglo al porcentaje de participación fijado a su apartamiento en la escritura de constitución, y a lo especialmente establecido, conforme al inciso (e) de la sec. 1293b de este título, a los gastos comunes para el adecuado sostenimiento del inmueble, sus servicios, tributos, cargas y responsabilidades." 31 L.P.R.A. sec. 1291m(e).
Art. 39:
"Los titulares de los apartamientos están obligados a contribuir proporcionalmente a los gastos para la administración, conservación y reparación de los elemen-

consecuencia ordenó que los miembros de la Junta actual pagaran todas las cuotas de mantenimiento adeudadas y que hicieran las gestiones legales necesarias para recobrar las cuotas no pagadas por los miembros anteriores.

De esta determinación recurrió la Junta del Condominio al anterior Tribunal Superior, Sala de San Juan, mediante recurso de revisión. Alegó, en síntesis, que la Ley no prohíbe que a los miembros de la Junta se les confiera una remuneración por los servicios prestados y que el Consejo puede estructurar la remuneración en la forma que estime más conveniente. A su modo de ver, las disposiciones contenidas en los Arts. 15(e) y 39 de la Ley, *supra,* no prohíben que la remuneración se haga mediante el relevo del pago de las cuotas de mantenimiento, puesto que estos artículos van dirigidos a aquellos titulares que arbitraria y caprichosamente intentan liberarse del pago de las referidas cuotas.

El tribunal de instancia avaló la posición de la Junta. En la sentencia emitida expresó:

> ...que el Consejo de Titulares no está eximiendo a los oficiales de la Junta de Condómines [sic] del pago de sus cuotas en el sentido en que lo contempla dicha sección de ley. Meramente a estos se le está fijando una compensación que es igual a un determinado por ciento de lo que le corresponde pagar por cuotas de mantenimiento y que se trata en realidad de una forma de pago por servicios y no de una exención de las cuotas .... Es sabido de los problemas que tienen los condominios en conseguir condómines [sic] que quieran hacer la labor de administrar el condominio y que una compensación económica, ya sea pagada directamente o por vía de exención de parte o el total de la cuota de mantenimiento, es un estímulo para que se interesen y rindan las labores que exige la administración de éste. No

---

tos comunes generales del inmueble y, en su caso, de los elementos comunes limitados, así como a cuantos más fueren legítimamente acordados.

"Ningún titular podrá librarse de contribuir a tales gastos por renuncia al uso o disfrute de los elementos comunes, ni por abandono del apartamiento que le pertenezca." 31 L.P.R.A. sec. 1293c.

vemos nada que sea contrario a la Ley de Propiedad Horizontal ni a la política pública que nos lleve a invalidar este arreglo.

Como consecuencia de su análisis, revocó la resolución administrativa recurrida.

Oportunamente D.A.Co., en representación del querellante Sr. Deogracia Álvarez Cintrón, presentó ante nos un recurso de *certiorari*. En lo pertinente alegó que las disposiciones de los Arts. 15(e) y 39 de la Ley, *supra*, son mandatorias por lo que no permiten pacto en contrario, aún cuando concurran en el mismo todos los titulares del inmueble. Dijo, además, que avalar el esquema retributivo que concede exención sobre el pago de las cuotas de mantenimiento se presta a que desaparezca la sana administración de cualquier condominio.

La opinión que hoy se emite acoge el planteamiento de la junta. Reconoce, correctamente, que la labor que ejercen los miembros de las juntas directivas de los inmuebles sometidos al régimen de propiedad horizontal es ardua y supone la dedicación de tiempo y esfuerzo para cumplir cabalmente con las responsabilidades de sus cargos. Por lo tanto, impera en ocasiones la necesidad de establecer una remuneración económica para atraer a personas idóneas y capacitadas para ocupar los mismos. Avalando la norma que hemos adoptado en relación con la Ley, en el sentido de que ésta debe ser interpretada de forma constructiva e imaginativa,[6] el Tribunal decide que "[s]e trata, realmente y desde un punto de vista práctico, no de una exoneración del pago de cuotas de mantenimiento, sino de una conversión de las mismas". (Énfasis suprimido.) Opinión mayoritaria, pág. 770. Se confirma así la determinación del tribunal de instancia.

---

[6] *Maldonado v. Consejo de Titulares*, supra.

## IV

Como correctamente se interpreta, la Ley no prohíbe que los miembros de la Junta reciban una remuneración por los servicios prestados. Ciertamente se trata del ejercicio de cargos que pueden imponer graves y significativas responsabilidades sobre las personas que los ocupan. Las complejas gestiones que acarrea en la actualidad la administración de los inmuebles sometidos al Régimen de Propiedad Horizontal requieren que sean personas capacitadas las que formen parte de sus órganos rectores. En muchas ocasiones el ejercicio responsable de los cargos supondrá la inversión de considerable tiempo y esfuerzo, por lo que si el reglamento bajo el cual se rige el condominio lo permite y su consejo lo aprueba, se justifica la determinación de conceder una remuneración a los miembros de las juntas de directores por los servicios prestados. Esto sirve de incentivo para lograr que personas capacitadas ocupen estos cargos, facilitando así la administración del inmueble para el bienestar de todos sus titulares.

Entiendo, también, que es viable el esquema que dispone que la remuneración acordada se pague mediante el mecanismo de eximir del pago de las cuotas de mantenimiento. Sin embargo, debe quedar claro que este mecanismo está sujeto y supeditado a los intereses de la comunidad de titulares. De surgir algún conflicto entre la forma de pago así establecida y los intereses de la comunidad de titulares en general, el mecanismo de pago tendría que ceder. La opinión del Tribunal no impide este reconocimiento.

El esquema avalado hoy supone, en la práctica, que existirá un gravamen preferente a favor de los miembros de la Junta contra los activos del Condominio con relación a sus salarios. Al no tener que pagar sus correspondientes cuotas de mantenimiento, los directores, acreedores del Consejo, hacen efectiva su acreencia inmediatamente, an-

tes de que se satisfagan las demás necesidades del Condominio y los créditos de otros acreedores. Siempre que las finanzas del edificio sean saludables, como en el caso de marras,(7) no existirá problema alguno.

Sin embargo, el pago de salarios de los miembros de las juntas de directores no constituye la única ni la más importante de las obligaciones económicas a las que está sujeto un inmueble bajo el Régimen de Propiedad Horizontal. Todo inmueble bajo este régimen tiene otras obligaciones, tales como, gastos "para el adecuado sostenimiento del inmueble, sus servicios, tributos, cargas y responsabilidades". Art. 15(e) de la Ley, *supra.*

El problema con el esquema de retribución en este caso podría surgir si el inmueble en algún momento comenzase a operar bajo una deficiencia económica. Bajo estas circunstancias surgirían conflictos entre los intereses particulares de los miembros de la Junta, en relación con el salario que cobran, y los intereses de la comunidad de titulares en general. En estos casos se estarían satisfaciendo prioritariamente las acreencia de los miembros de la Junta en detrimento de los intereses de los otros condóminos. El esquema se convertiría en uno contrario a los mejores intereses de la totalidad de la comunidad de titulares. Se estaría desalentando, en lugar de promover, la vida en comunidad dentro de proyectos multifamiliares. Las repercusiones del esquema de retribución mediante el relevo del pago de cuotas serían contrarias a la política pública del Estado y, por lo tanto, tendría que ceder. En el momento en que ocurra esto, los directores vendrían obligados a pagar sus respectivas cuotas de mantenimiento en su totalidad para que, junto con los demás fondos disponibles, se pudie-

---

(7) De las minutas de la referida Asamblea del Consejo de Titulares del Condominio Villa Caparra Executive, celebrada el 19 de diciembre de 1988, surge que al cabo de 1988 el mismo contaba con un superávit de trece mil ochocientos cincuenta y seis dólares ($13,856) y un balance de veintiséis mil ochocientos cincuenta y un dólares ($26,851) en su reserva.

sen establecer, de forma objetiva, las prioridades de pago más equitativas y que más beneficien a todos los titulares del condominio.

En síntesis, lo que deseo comunicar es que no puede entenderse que la norma que hoy se adopta puede aplicarse incondicionalmente. Reconozco que no podemos condenar, sin más, el esquema de remuneración adoptado por el Consejo del Condominio. Debe quedar claro, sin embargo, que cuando en la práctica la aplicación de la norma sea lesiva a los mejores intereses de la comunidad de titulares en general, dicha norma deberá ceder. La regla a aplicar, por lo tanto, es la de la razonabilidad.

Entiendo que la opinión del Tribunal es cónsona con esta interpretación, razón por la cual la suscribo.