TEXTO COMPLETO DE LA SENTENCIA
Jesús M. Luna Valentín, recurre ante nos mediante auto de Revisión presentado el 10 de julio de 2002. Solicita revisemos la Resolución emitida el 6 de marzo de 2002, por la Junta de Síndicos de la Administración *767 de los Sistemas de Retiro de los Empleados del gobierno y la Judicatura (en adelante, Administración). Mediante la Resolución en cuestión, la Junta de Síndicos (en adelante, la Junta) se negó a concederle al recurrente los beneficios por Incapacidad Ocupacional.
Habiendo analizado los escritos presentados por las partes, a la luz del derecho aplicable, dictaminamos expedir el auto solicitado y confirmar la Resolución de autos. Veamos.
I
El 30 de marzo de 1992, el Sr. Jesús M. Luna Valentín (en adelante, Sr. Luna), sufrió un accidente durante el curso de sus labores como Trabajador II de la Administración de Servicios Generales. Alegó el Sr. Luna, que al levantar un saco de cemento sintió un fuerte dolor de espalda. Por motivo de ello, éste acudió al Fondo del Seguro del Estado (en adelante, el Fondo), en busca de tratamiento. El 3 de abril de 1992, el Fondo le compensó por el accidente sufrido, otorgándole un cinco porciento (5%) de incapacidad. Al recurrente, se le diagnosticó esguince lumbo sacral y “bulging L4-L5”, y se le dio de alta con derecho a trabajar.
El 10 de junio de 1993, el recurrente acudió nuevamente al Fondo alegando haberse lastimado la espalda al abrir la compuerta de un camión. Por esta lesión, se le diagnosticó un “Lumbo Sacral Strain, HNP L4-L5”, y Radiculopatía L5. Por razón de ello, se le otorgó un veinte porciento (20%) de incapacidad. Asimismo, se le dio de alta definitivamente el 2 de junio de 1994. El Sr. Luna arguye que debido a los referidos accidentes desarrolló una condición emocional depresiva. En el Fondo, se le diagnosticó Depresión mayor recurrente y se le confirió un quince porciento (15%) de incapacidad por la condición emocional. El 29 de mayo de 1995, el recurrente solicitó los beneficios de incapacidad ocupacional del sistema de retiro. El 15 de noviembre de 1995, la Administración le denegó los beneficios por incapacidad solicitados. Inconforme con esta decisión, el 26 de diciembre de 1995, el recurrente solicitó reconsideración de la aludida determinación. Así, el 29 de marzo de 1996, la misma fue denegada. El 26 de abril de 1996, el recurrente apeló ante la Junta la denegatoria de beneficios.
En tanto, el 24 de enero de 1996, la Administración del Seguro Social emitió una decisión a favor del Sr. Luna. Mediante la misma, se le otorgaron a éste los beneficios por incapacidad. Habida cuenta de ello, el 13 de septiembre de 1996, el Sr. Luna solicitó que se devolviera el caso a la Oficina de Determinación de Incapacidad a los efectos de que tomara en consideración el aludido dictamen.
Así las cosas, el 3 de febrero de 1997, se presentó por parte del recurrente, una moción ante la Junta solicitando el archivo del caso sin perjuicio. Ello, pues el Sr. Luna se encontraba en trámites de apelar ante la Comisión Industrial la decisión emitida por el Fondo el 9 de febrero de 1996. Mediante la misma, la agencia se había negado a relacionar la condición emocional alegada por el recurrente con las lesiones orgánicas sufridas por éste.
Como resultado de la apelación, el 24 de noviembre de 1997, la Comisión Industrial revocó la determinación del Fondo, relacionando la condición emocional y ordenando a su vez que el tratamiento fuera en descanso. El 10 de junio de 1999, el recurrente solicitó a través de su representación legal la reapertura del caso ante la Junta. Solicitó, además, se tomara bajo consideración el hecho de que la Comisión Industrial había relacionado la condición emocional.
El 7 de noviembre de 2001, se celebró la vista en su fondo del caso de autos. Posteriormente, el 6 de marzo de 2002, la Junta emitió su decisión. La misma fue notificada el 3 de mayo del año en curso. El 28 de mayo de 2002, el recurrente oportunamente presentó una Moción de Reconsideración ante la Junta. En ésta solicita, entre otras cosas, que acoja el Informe Médico preparado por el Dr. Héctor Cases Gallardo. Esgrime el recurrente, que el Dr. Cases es su neurólogo desde el 1996 y que por omisión de su anterior abogado, no se presentó el Informe ante la consideración de la Junta. Al momento de emitir nuestra decisión, la Junta no había *768 actuado sobre la aludida moción.
Inconforme con la decisión de la Junta, el recurrente acude ante nos señalando la .comisión del siguiente error:

“Si considerando la prueba médica, como no médica, en récord, respecto a las condiciones de la espalda y mental del recurrente, el mismo tiene derecho a una incapacidad ocupacional. ”

El 27 de agosto de 2002, emitimos Resolución mediante la cual concedimos a la parte recurrida, la Administración, treinta (30) días para presentar su escrito en oposición. El 3 de octubre de 2002, la Administración presentó su Escrito en Cumplimiento de Resolución. Contando con la comparecencia de las partes, nos encontramos en posición de resolver. Así lo hacemos.
II
Como cuestión de umbral, nos vemos compelidos a hacer unos señalamientos relativo al apéndice del caso que nos ocupa. La importancia del apéndice para la apropiada disposición de un caso es innegable, pues nuestra obligación como Tribunal Apelativo intermedio estriba en resolver de forma fundamentada los recursos presentados. Por motivo de nuestra función apelativa, el apéndice resulta una adición irremplazable. Por medio del mismo, es que podemos descargar eficientemente nuestra labor revisora, pues éste substituye, en lo pertinente, los autos originales. Así, el Tribunal Supremo de Puerto Rico ha enfatizado la importancia del apéndice, señalando que “el Reglamento visualiza el [ajpéndice como la recopilación documental (copia literal), de los escritos acumulados durante el trámite en el Tribunal de Primera Instancia; esto es, copia sustitutiva de los autos originales.” Codesi, Inc. v. Mun. de Canóvanas 2000 JTS 61, pág. 883.
Es por ello que nuestro Reglamento dispone de manera específica cómo habrá de presentarse un recurso de revisión administrativa con su respectivo apéndice. Regla 59 (E), Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXIIA. Así pues, el apéndice ha de incluir copia literal de las alegaciones de las partes ante la agencia, la providencia o resolución de la que se recurre, y toda moción necesaria para la resolución del recurso, entre otras cosas. Regla 59 (E) (a)(c)(d), supra.
Asimismo, en el acápite (E)(3) de la Regla 59 del Reglamento, supra, se enuncia específicamente que:

“Todas las páginas del apéndice se numerarán consecutivamente. Los documentos se organizarán en orden cronológico. Además, el apéndice contendrá un índice que indicará la página en que aparece cada documento.”

En adición, la Regla 74 del Reglamento, supra, establece que “[e]n los casos en que, conforme a estas Reglas, es requisito acompañar un apéndice como parte de un escrito, su presentación deberá cumplir con lo siguiente: (A) Todas las páginas del apéndice se numerarán consecutivamente. Si el apéndice contiene más de un documento, estará precedido de un índice que indicará la página en que aparece cada documento. ”
Del más somero estudio al apéndice de la Petición de Revisión presentada por la parte recurrente, se desprende el craso incumplimiento con las citadas disposiciones reglamentarias. El análisis al apéndice de la petición de revisión, ha resultado en una ardua y en ocasioaes, imposible tarea. De entrada, el apéndice no incluye un índice de documentos. Asimismo, los folios no tienen una secuencia lógica o cronológica; tampoco se encuentran numerados correctamente. Véase, totalidad del apéndice de autos.
Aun cuando en otro recurso lo anterior no resultara extremadamente complejo, en el caso de marras los documentos se extienden desde el año 1992 hasta el presente. En adición, el contenido del apéndice es mayormente informes médicos de índole pericial, por lo que en conjunto resulta en mayor dificultad de *769 comprensión. Por ello, es imperioso señalar que los compañeros letrados tienen la obligación de cumplir celosamente con las disposiciones de nuestro Reglamento. Lo anterior es imprescindible para la adjudicación eficiente y diligente de los recursos ante nuestra consideración.
Es procedente señalar que el Tribunal Supremo de Puerto Rico ha manifestado que las disposiciones reglamentarias sobre los recursos a presentarse, tanto en el Tribunal Supremo como en el Tribunal de Circuito de Apelaciones, deberán observarse rigurosamente y que su incumplimiento podría conllevar la desestimación del recurso. Arriaga v. FSE., 145 D.P.R. 122 (1998).
No empece lo anterior, somos del firme criterio que aun en circunstancias como las reseñadas en el caso de autos, los recursos apelativos deben resolverse en sus méritos. Es por ello que dedicamos esfuerzo y atención a evaluar los méritos del presente recurso, sin consideraciones a la aciaga tarea y en virtud de servir los mejores intereses de las partes. Destacamos los más recientes pronunciamientos del Tribunal Supremo en Román Velázquez v. Román Hernández, en donde se enfatiza que la desestimación del recurso debe ser utilizada sólo como último recurso, pues “[d]e esta manera se concilian el deber de las partes de cumplir con los Reglamentos procesales y el derecho estatutario de todo ciudadano a que su caso sea revisado por un panel colegiado de tres (3) jueces. ” 
Lo anterior no priva que se aperciba al letrado de la parte recurrente que en futuras comparecencias ha de observar minuciosamente las disposiciones de nuestro Reglamento. Lo contrario, ha de conllevar sanciones.
III
“El alcance de la revisión judicial comprende tres áreas. Ellas son: (1) Concesión del remedio apropiado, (2) Revisión de las determinaciones de hechos conforme al criterio de la evidencia sustancial, y (3) Revisión completa y absoluta de las conclusiones de derecho.” Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da. Ed., Bogotá, Forum, 2001, pág. 534. Asimismo, el tribunal revisor deberá precisar si las actuaciones de la agencia son acordes al poder que le fuera delegado por ley; así se determinará si la actuación fue ultra vires. Puerto Rico Telephone Company v. Junta Reglamentadora de Telecomunicaciones de Puerto Rico, 2000 JTS 98. (Citas omitidas).
El expediente de la agencia constituirá la base exclusiva para la acción de la agencia en un procedimiento adjudicativo y para la revisión judicial ulterior. Ley de Procedimiento Administrativo Uniforme (LPAU), Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. see. 2168. “Al evaluar la decisión de una agencia, el tribunal debe determinar si ésta actuó de manera arbitraria, ilegal o tan irrazonable que sus actuaciones constituyeron un abuso de discreción.” Municipio de San Juan v. J.C.A. y otros, 99 JTS 152, citando a Fuertes v. A.R.P.E., 134 D.P.R. 947 (1993). Véase, además, Municipio de San Juan v. Junta de Calidad Ambiental, 2000 JTS 193; T-JAC v. Caguas Centrum Limited, 99 JTS 60; Rivera v. A & C Development Corp., 144 D.P.R. 450 (1997); Agosto v. Fondo del Seguro del Estado, 132 D.P.R. 866 (1993). Para que el tribunal revisor se encuentre en posición de analizar la determinación tomada por el organismo administrativo, es imprescindible que las agencias acojan determinaciones de hechos y de derecho. 
El Tribunal Supremo de Puerto Rico ha manifestado en reiteradas ocasiones que las determinaciones de hechos adoptadas por la agencia serán sostenidas por los tribunales de estar éstas basadas en evidencia sustancial. Se considera a la evidencia sustancial como aquella evidencia que “una mente razonable pueda aceptar como adecuada para sostener una conclusión”. Asoc. de Vecinos Hosp. San Jorge v. United Medical Corp., 2002 JTS 21, a la pág. 561; Ramírez v. Departamento de Salud, 99 JTS 47; Associated Insurance Agencies, Inc. v. Comisionado de Seguros de P.R., supra.
Predicado en ello, los tribunales están compelidos a no intervenir con las determinaciones de hechos *770 tomadas por la agencia administrativa de hallarse fundamentadas en prueba que surge del récord administrativo. Puerto Rico Telephone Company v. Junta Reglamentadora de Telecomunicaciones de Puerto Rico, supra; Costa Wood, et al. v. Caguas Expressway Motors, Inc., 2000 JTS 11; Asoc. de Vecinos Hosp. San Jorge v. United Medical Corp., supra; T-JAC, Inc. v. Caguas Centrum, supra; Misión Industrial de P.R. v. J.P. y A.A.A., 143 D.P.R. 804 (1997); Associated Insurance Agencies, Inc. v. Comisionado de Seguros de P.R., 144 D.P.R. 425 (1997).
Asimismo, el principio neurálgico a la revisión judicial administrativa lo es el salvaguardar por la corrección las actuaciones administrativas. La intención legislativa ha sido de revestir a las determinaciones realizadas por las agencias, con un velo de corrección y legitimidad. Por ello, es ampliamente conocido que las actuaciones de las agencias administrativas gozan de la más dilatada deferencia. No obstante, la deferencia no ha de ser óbice para la revisión en aquellos casos donde la misma menoscabe derechos de índole fundamental o sea irrazonable. Costa Wood, et al. v. Caguas Expressway Motors, Inc., supra; Reinaldo Castillo Camacho v. Dpto. del Trabajo, Op. de 29 de septiembre de 2000, 2000 JTS 154; Reyes Salcedo v. Policía de P.R., 143 D. P.R. 85 (1997); Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692 (1975); Quevedo Segarra v. J.A.C.L., 102 D.P.R. 87 (1974); Rodríguez v. Comisión Industrial, 99 D.P.R. 368 (1970); Román v. Superintendente de la Policía, 93 D.P.R. 685 (1966).
Con respecto de las determinaciones de derecho, el Tribunal Supremo de Puerto Rico pronunció:
“Las conclusiones de derecho de la agencia, distinto de las determinaciones de hechos, pueden ser revisadas ‘en todos sus aspectos por el tribunal’, LPAU, see. 4.5, 3 L.P.R.A. § 2175 (1992), sin sujeción a norma o criterio alguno. Véase, Miranda v. Comisión Estatal de Elecciones, ante. Esto no significa, sin embargo, que al ejercer su función revisora, el tribunal pueda descartar libremente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. Al contrario, hemos reiterado consistentemente -antes y después de la vigencia de la LPAU- que, de ordinario, los tribunales deben deferencia a las interpretaciones y conclusiones de los organismos administrativos. ” Puerto Rico Telephone Company v. Junta Reglamentadora de Telecomunicaciones de Puerto Rico, supra, a la pág.1266. (Citas omitidas)
Acorde a lo anterior, la parte que objete las determinaciones de hechos emitidas por una agencia administrativa deberá acreditar que el organismo actuó de manera arbitraria, caprichosa o en patente menoscabo a derechos fundamentales. Maisonet v. Fondo del Seguro del Estado, 142 D.P.R. 194 (1996); Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194 (1987).
El criterio rector para los tribunales, será la razonabilidad en la actuación de la agencia recurrida. Así pues, al realizar su función revisora, el tribunal está compelido a considerar la especialización y experiencia de la agencia sobre las cuestiones que tuviera ante sí. Por tanto, en el descargo de su función deberá caracterizar entre asuntos de discernimiento estatutario o cuestiones de especialización administrativa. No obstante, la deferencia reconocida no equivale a la renuncia de la función revisora del Tribunal en instancias apropiadas y meritorias, como resulta ser cuando el organismo administrativo ha errado en la aplicación de la ley. Reyes Salcedo v. Policía de P.R., supra; Rodríguez v. Comisión Industrial; 99 D.P.R. 368 (1970).
Según expuesto en Adorno Quiles v. Hernández, 126 D.P.R. 191 (1990), a la pág. 195, "[...] al evaluar los casos es necesario distinguir entre cuestiones de interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa.” Quiñones v. San Rafael Estates, S.E., 143 D.P.R. 756 (1997); Alvarez v. Junta de Directores, Con. Villa Caparra, 140 D.P.R. 763 (1996); Fuertes v. A.R.P.E., supra.
Finalmente, el foro judicial podrá sustituir el criterio del organismo administrativo por el propio, sólo en *771 aquellas ocasiones que no encuentre una base racional que fundamente la actuación administrativa. No obstante, es axioma judicial que ante la prueba pericial y documental, el tribunal revisor se encuentra en igual posición que el foro recurrido y, por tanto, está facultado para apreciar la prueba apoyándose en su propio criterio. Dye-Tex de P.R. v. Royal Ins. Co., 2000 JTS 67; Rodríguez Roldan v. Municipio de Caguas, 133 D.P.R. 694 (1993).
Por su parte, la Ley de Retiro del Personal del Gobierno, Ley Núm. 447 de 15 de mayo de 1951, según enmendada, (3 L.P.R.A. see. 761 et seq), establece en su sección 769 que:

“Todo participante que, como resultado de una incapacidad que se origine por causa del empleo y surja en el curso del mismo, quedare incapacitado para el servicio, tendrá derecho a recibir una anualidad por incapacidad ocupacional, siempre que: (a) según se dispone en la see. 771 de este título, se recibiere suficiente prueba médica en cuanto a la incapacidad mental o física del participante conforme a los criterios normalmente aceptados en el área de la compensación por incapacidad que mediante reglamento fije el Administrador; (b) el participante o el patrono, de acuerdo con los reglamentos de la Junta, notifique al Administrador con respecto a dicha incapacidad, y (c) la incapacidad fuere indemnizable de acuerdo con las disposiciones de las secs. 1 et seq. del Título 11....”.

El Tribunal Supremo de Puerto Rico ha expresado que la definición de incapacidad que rige los procedimientos ante el Retiro “...debe ser de tal naturaleza que le inhabilite para desempeñar las funciones de su empleo y de cualquier otro empleo remunerativo....”. Sánchez v. A.S.R.E.G.J., 116 D.P.R. 372 (1985). Se colige, pues, que la definición de incapacidad que acoge el Retiro es más restrictiva que las de otras agencias similares. El peticionario, ante el Retiro, está obligado a demostrar que su incapacidad es de tal magnitud que le impide realizar no sólo las funciones del puesto que ocupara, sino también las de cualquier otro puesto remunerativo de igual paga que el que percibía.
Conforme a lo dispuesto en la Ley Núm. 447, supra, se promulgó el Reglamento General para la Concesión de Pensiones, Beneficios y Derechos, Núm. 4930, aprobado el 22 de abril de 1993 (en adelante, Reglamento). En éste, se fijan los criterios a seguir por la agencia para efectos de determinar si procede otorgar beneficios por incapacidad ocupacional a un peticionario. Así, pues, se estableció en el mismo:

“(a) que el participante esté en servicio activo a la fecha de radicación de la solicitud,

(b) que se reciba suficiente prueba médica en cuanto a la incapacidad mental o física del participante;

(c) que el Fondo del Seguro del Estado haya determinado que la condición incapacitante está relacionada con el empleo del participante y es compensable;

(d) que el participante o su patrono notifique dicha incapacidad por escrito al Administrador...”. Regla 24, sección 24.2, Reglamento, supra.
Además, se dispuso en la Regla 24, sección 24.4 del Reglamento, supra, que:

“[sji de la evidencia médica que consta en el expediente y conforme al listado de criterios médicos (Adult Listings ’) establecidos para determinar incapacidad y del análisis e investigación que realicen los técnicos en determinación de incapacidad designados por el Administrador, no se pudiese determinar con certeza la incapacidad, se le podrá requerir al participante que se someta a aquellos exámenes médicos adicionales que se entiendan necesarios para adjudicar en sus méritos la petición de beneficios por incapacidad. Los exámenes médicos adicionales serán realizados por médicos seleccionados por el Administrador. Recibidos los resultados de dichos exámenes, el médico asesor hará la determinación final sobre la incapacidad y someterá su recomendación al Administrador. Se considerará capacitado al participante, si no está total y 
*772
permanentemente incapacitado e imposibilitado para cumplir los deberes de cualquier cargo que su patrono le hubiere asignado o para trabajar en cualquier empleo retribuido...

IV
El Tribunal Supremo de Puerto Rico ha destacado que aquella parte que impugne la evidencia en la que se basó la agencia para formular sus determinaciones de hechos, tendrá que “demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. ” Misión Ind. P.R. v. Junta de Planificación, 146 D.P.R. 64 (1998), a la pág. 131.
En el caso de autos, como parte de la Resolución impugnada, se adoptaron, entre otras, las siguientes determinaciones de hechos que resumimos a continuación:
“a. Al apelante nunca le dieron terapias, ni lo tuvieron que inyectar para los dolores de la espalda. Solamente ha sido tratado con medicamentos. Declaró en la vista celebrada que tomaba el medicamento Motrin.

b. El Sr. Luna declaró que su condición física se empeoró y que comenzó a padecer de los nervios. Indicó que se volvía irritable y en ocasiones se ponía a llorar.

c. El Sr. Luna padece de lesiones orgánicas en su espalda. Alegó que sus dolores le surgen cuando lleva mucho tiempo sentado.

d. El Sr. Luna nunca ha tenido que ser hospitalizado a consecuencia de sus lesiones orgánicas, o por su condición emocional.

e. El Sr. Luna, durante el testimonio prestado en la vista en su fondo, declaró que puede levantar de 10 a 15 libras de peso. ” 

Además, en la Resolución se detallan taxativamente los médicos que atendieron al Sr. Luna, al igual que sus respectivos diagnósticos. Asimismo, los médicos asesores a la Administración revisaron la totalidad del expediente encontrando, bajo su opinión profesional, que el recurrente no se encuentra incapacitado bajo los criterios de la Administración. Es preciso reiterar que los criterios de incapacidad para la Administración difieren de aquéllos adoptados por otras agencias.
El Tribunal Supremo de Puerto Rico ha enfatizado que las determinaciones de incapacidad emitidas por el Fondo o por la Administración del Seguro Social, no son vinculantes para la Administración del Retiro. Negrón Marrero v. C.I.T. Fin. Services, 111 D.P.R. 657 (1981). Lo anterior responde a que los criterios de elegibilidad para las aludidas agencias difieren en tomo a la severidad de la incapacidad requerida. Por su parte, el recurrente enfatiza ante nos, como prueba adicional, el Informe Médico preparado por el Dr. Cases. Del análisis del mismo se desprende, que aun habiendo sido presentado oportunamente ante la Junta, éste no presenta prueba que no se hallara con anterioridad en el expediente del caso, y que haya sido evaluada por la Administración. 
Como mencionáramos, y de conformidad con los preceptos doctrinales de revisión judicial de las decisiones administrativas, le corresponde a la parte inconforme con las referidas determinaciones, probar la existencia en el expediente de prueba adicional que disminuya o desacredite el valor probatorio de la evidencia impugnada. La prueba ofrecida deberá desfavorecer la presunción de que la determinación del organismo administrativo se desprende de la totalidad de la prueba que éste tuvo ante su consideración. Ramírez v. Departamento de Salud, *773 supra; Chase Manhattan Bank v. Emmanuelli Bauzá, 111 D.P.R. 708 (1981).
El propósito de la regla de evidencia sustancial estriba en “evitar la sustitución del criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor”. López v. Junta de Planificación, 80 D.P.R. 646 (1958), a la pág. 673.
En el caso de marras, el recurrente no nos ha colocado en posición de revocar las determinaciones de hechos o de derecho realizadas por la agencia. De la Resolución impugnada, se colige que la agencia recurrida hizo acopio de la totalidad de la evidencia médica realizada al recurrente al momento de realizar sus determinaciones de hechos. Es evidente que la agencia cumplió con la obligación de auscultar el expediente, previo a tomar su determinación final.
En suma, el recurrente no ha impugnado el carácter sustancial de las determinaciones efectuadas por la agencia. Como corolario de su propio testimonio, surge que éste puede levantar de 10 a 15 libras de peso, que no ha requerido hospitalizaciones u otro tipo de tratamiento que no sean medicamentos, así como tampoco ha tenido que recibir terapias para las lesiones de la espalda. Ante la evidencia presentada, y las recomendaciones de los médicos asesores de la Administración, se desprende que hay prueba suficiente en el expediente que sostenga la determinación final de la agencia. No se cometió el error señalado.
y
Por los fundamentos anteriormente expresados, se expide el auto de Revisión y se confirma la Resolución recurrida. Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau Secretaria General
ESCOLIOS 2003 DTA 22
1. Caso número: 92-133980.
2. Véase, Certificación de Compensabilidad para la Administración de Sistemas de Retiro de Empleados del ELA, con fecha de 4 de octubre de 1996, en autos.
3. Véase, Decisión del Administrador, con fecha de 15 de enero de 1999 y notificado el 18 de mayo de 1999.
4. Al momento de solicitar los mismos, el recurrente había cotizado tres (3) años para el sistema de retiro.
5. Véase, Decisión del Administrador Sobre Cumplimiento Orden Comisión Industrial, con fecha de 12 de enero de 1999. Asimismo, se le concedió el alta definitiva el 5 de marzo de 1998.
6. En la misma, se atendió de forma conjunta la condición orgánica y emocional del Sr. Luna. Además, en la referida vista sólo compareció como testigo el Sr. Luna.
7. El 27 de septiembre de 2002, la parte recurrida solicitó prórroga para presentar su escrito; la misma fue concedida el 1ro de octubre del año en curso.
8. Inclusive, algunos documentos se anexaron al revés, otros resultan ilegibles.
9. Siempre y cuando gocemos de jurisdicción y las partes cumplan con los requisitos de ley para el perfeccionamiento del recurso. Entre éstos, que el recurso se presente dentro del término jurisdiccional de treinta (30) días a partir del archivo en autos de copia de la notificación de la sentencia, acompañado de un apéndice completo que incluya los documentos que requiere la ley. Regla 54.4 de las Reglas de Procedimiento Civil y la Regla 16(E); Regla 34 (E); Regla 59 (E), y Regla 74 *774 de nuestro Reglamento.
10. Además, hemos tomado bajo consideración que el incumplimiento no nos priva irremediablementerde*.asumir.. jurisdicción para atender el caso. “Un tribunal no tiene discreción para asumir jurisdicción donde no la hay. ” López v. J. Gus Lallande, 144 D.P.R 774 (1997), a la pág. 792; Aponte v. Policía de P.R., 142 D.P.R. 75 (1996); Martínez v. Junta de Planificación, 109 D.P.R. 839 (1980).
11. 2002 JTS 132, a la pág. 255.
12. Procede destacar que: “estadísticas y dictámenes revelan dramáticamente que subsiste entre algunos abogados un desconocimiento de las normas y reglas aplicables a los recursos apelativos ante el Tribunal de Circuito de Apelaciones y este Tribunal. Ha transcurrido tiempo más que suficiente para la profesión legal haberse familiarizado con las reglas y normas pertinentes. No podemos, pues, en aras de una ilusoria flexibilidad, erosionar sustancialmente esa doctrina apelativa. ” Codesi, Inc. v. Municipio de Canóvanas, supra.
13. “[Ejntre los objetivos que se persigue para que los foros administrativos emitan determinaciones de hecho y conclusiones de derecho, podemos enumerar los siguientes: (1) proporcionar a los tribunales la oportunidad de revisar adecuadamente la decisión administrativa y facilitar esta tarea; (2) fomentar que la agencia adopte una decisión cuidadosa y razonada dentro de los parámetros de su autoridad y discreción; (3) ayudar a la parte afectada a entender porqué el organismo administrativo decidió como lo hizo, y al estar mejor informada, poder decidir si acude al foro judicial o acata la determinación; (4) promover la uniformidad intraagencial, en particular cuando el proceso decisorio institucional es adoptado por distintos miembros de un comité especial a quienes les está encomendado celebrar vistas y recibir la prueba; y (5) evitar que los tribunales se apropien de funciones que corresponden propiamente a las agencias administrativas bajo el concepto de especialización y destreza. Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265, 276-278 (1987)”, según citado en Municipio de San Juan v. J.C.A. y otros, supra, a la pág. 126.
14. “El tribunal podrá conceder el remedio apropiado si determina que el peticionario tiene derecho a un remedio.

Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.

Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal”. Ley de Procedimiento Administrativo Uniforme, supra.
15. “No empece esta deferencia, la interpretación de la agencia no merece deferencia si la misma afecta derechos fundamentales, resultare irrazonable, o conduce a la comisión de injusticias. Comisionado de Seguros de Puerto Rico v. Antilles Insurance Company, res. el 2 de abril de 1998, 98 JTS 38. ” Según citado en Costa Wood, et al. v. Caguas Expressway Motors, Inc., supra, a la pág. 489.
16. Véase, pág. 27 de transcripción de vista celebrada el 7 de noviembre de 2001, en apéndice de autos.
17. Véase, acápite núm. trece (13) incisos (a)-(n) de Resolución, en apéndice de autos.
18. Véase, inciso (m), pág. tres (3) de Resolución, en apéndice de autos.
19. Igualmente, con respecto a una Certificación Médica a que hace mención el recurrente, en donde se indica que el Sr. Luna se encuentra incapacitado para trabajar, pudimos identificar una Certificación a esos efectos dentro del apéndice, pero ésta no hace mención del doctor que la emite. Ello hace imposible que le adjudiquemos credibilidad al aludido Certificado sin conocer quién lo emitió y bajo que capacidad.