TEXTO COMPLETO DE LA SENTENCIA
Antecedentes
El Sr. Daniel Soto Rivera (Sr. Soto) solicita que revoquemos la Resolución dictada el 5 de mayo de 2009 por la Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura, (La Junta). Dicha Resolución confirmó la desestimación a la solicitud de pensión por Incapacidad Ocupacional y/o Incapacidad No Ocupacional, solicitada por el Sr. Soto.
Hechos
Según consta del expediente ante nos, el último trabajo del Sr. Soto en el servicio público fue con la Administración de Corrección como Oficial de Custodia I, alcanzando un total de 17.5 años de servicios acreditados.
El 25 de octubre de 1995, la Corporación del Fondo del Seguro del Estado (CFSE) (caso núm.: 96-36-00087- *1000 6) le diagnosticó dolor en el oído derecho post explosión de un teléfono por rayo, y le dio de alta sin incapacidad. El Sr. Soto sufrió otro accidente el 13 de junio de 2003, (caso núm. 03-36-00317-8) y la CFSE le diagnosticó depresión mayor. El Sr. Soto informa que además padece de alta presión arterial Bradicardia Sintomática y condición cardiaca. Así las cosas, el 4 de marzo de2004 solicitó pensión ante la Administración de los Sistemas de Retiro de los Empleados de Gobierno y la Judicatura (la Administración) por incapacidad ocupacional. El Sr. Soto nació el 26 de febrero de 1961, por lo que al 4 de marzo de 2004 contaba con 43 años de edad.
El 28 de marzo del 2005, la Administración le denegó la solicitud de beneficios, al determinar que el Sr. Soto se encontraba capacitado para desempeñar labores en el servicio público. No conforme con la determinación, presentó un escrito de Apelación Administrativa el 20 de abril de 2005 ante la Junta. Durante los trámites de la Apelación, el Sr. Soto presentó evidencia médica no considerada por la Administración anteriormente.
Mediante Resolución de la Junta de 28 de marzo de 2007, el caso fue devuelto a la Administración para evaluar el caso a la luz de la nueva evidencia sometida.
El 3 de octubre de 2007, la Administración denegó los beneficios solicitados por el Sr. Soto. Inconforme, el 17 de octubre de 2007, el Sr. Soto instó un recurso de apelación ante Junta, solicitando se revoque la decisión denegatoria informada por la Administración de los Sistemas de Retiro.
La Junta celebró un “status conference”, el día 27 de marzo de 2008, en el cual ambas partes sometieron mociones informativas relativas a los pormenores del caso. El 5 de mayo de 2009, la Junta dictó su resolución denegando. De ello recurre el Sr. Soto en la causa de epígrafe, e imputa al foro administrativo incidir de la siguiente forma:
“A. Erró la Honorable Junta de Síndicos del Sistema de Retiro en la interpretación que hace de la Ley y el Reglamento, ya que es irrazonable y produce resultados inconsistentes con o contrarios, al propósito de la Ley y lleva a la comisión de una injusticia.
B. Erró la Honorable Junta de Síndicos al no mencionar y discutir la decisión de seguro social que le aprueba la pensión por encontrar que está incapacitado total y permanentemente por cumplir el listado 2.07 de los sentidos especiales del habla.
C. Erró la Honorable Junta de Síndicos al no mencionar y encontrar que está incapacitado total y permanentemente por cumplir con el listado 4.05 del sistema cardiovascular.
D. Erró la Honorable Junta de Síndicos al no mencionar y discutir la decisión del Seguro Social que le aprueba la pensión por encontrar que está incapacitado total y permanentemente por cumplir el listado 11.04 de los trastornos mentales y no tomar en consideración que la parte apelante padece de una seria condición emocional diagnosticada como depresión mayor severa con rasgos psicóticos.
E. Erró la Honorable Junta de Síndicos en darle más peso a los resúmenes de expedientes de los asesores médicos de la administración que nunca lo han evaluado personalmente y sólo basan su determinación en una lectura del expediente, en vez de darle más peso a los médicos de cabecera que le ofrecen tratamiento y conocen bien sus condiciones y establecen que él está incapacitado total y permanentemente.
F. Erró la Honorable Junta de Síndicos en la definición de lo que es una persona incapacitada total y permanentemente, según la Ley Número 447 del 15 de mayo de 1951.
G. Erró la Honorable Junta de Síndicos al no evaluar la capacidad funcional de la parte apelante para hacer otro Trabajo Remunerativo a la luz de su edad, preparación académica y experiencia de trabajo. *1001 H. Erró la Honorable Junta de Síndicos en no citar a la vista un perito médico que pudiera testificar en la vista y explicarle al oficial examinador si las condiciones del apelante son incapacitantes y si cumplen los listados de retiro de gobierno.”
Exposición y Análisis
En aras de la economía procesal, atenderemos los señalamientos de error en conjunto, conforme a la controversia central que las nutre.
Es norma que las decisiones de los organismos administrativos gozan de gran deferencia ante los tribunales por lo que se presumen correctas, a razón de la experiencia y conocimiento especializado de la agencia. Socorro Rebollo v. Yiyi Motors, 161 DPR 69 (2004); Pacheco v. Estancia, 160 DPR 409, 431 (2003); T-JAC, Inc. v. Caguas Centrum Limited, 148 DPR 70, 80 (1999); Agosto v. Fondo del Seguro del Estado, 132 DPR 866, 879 (1993). Quien alegue lo contrario en revisión, tendrá que presentar evidencia suficiente admitida en el proceso administrativo capaz de derrotar tal presunción, no pudiéndose descansar en meras alegaciones mucho menos de tipo conclusorio.
La revisión judicial es limitada y se circunscribe a determinar si la actuación administrativa en este caso de la Junta, fue una razonable en función de todas las constancias en el récord o si por el contrario medió abuso de discreción. Municipio de San Juan v. J.C.A., 149 DPR 263 (1999); Franco v. Depto. de Educación, 148 DPR 703 (1999); T-JAC, Inc. v. Caguas Centrum Limited, supra, pág. 88; Com. Vec. Pro-Mej., Inc. v. J. P., 147 DPR 750, 761 (1999).
Tal deferencia no ha de ser óbice para nuestra función revisora en aquellos casos en que se nos demuestre que el dictamen es claramente irrazonabls. Castillo Camacho v. Dpto. del Trabajo, 152 DPR 91 (2000); Costa Wood, et al. v. Caguas Expressway Motors, Inc., 149 DPR 881, 889 (1999). Nuestro criterio rector será el de la razonabilidad del dictamen administrativo conforme al récord, por lo que la deferencia no equivale a renunciar a nuestra función revisora en situaciones apropiadas y meritorias; cuando resulte claro que el organismo administrativo ha errado en la aplicación de la ley. Reyes Salcedo v. Policía de P.R., 147 DPR 85 (1997); Rodríguez v. Comisión Industrial, 99 DPR 368 (1970).
Al evaluar cada caso en sus méritos, debemos distinguir entre cuestiones de interpretación estatutaria y aquellas que atienden a la pericia administrativa. En la primera, los tribunales son especialistas, y en las otras, la pericia administrativa cuenta con mucho peso. Quiñones v. San Rafael Estates, S.E., 143 DPR 756 (1997); Álvarez v. Junta de Directores, Con. Villa Caparra, 140 DPR 763 (1996).
La cuestión planteada antes nos se circunscribe a determinar si, en este caso, la Junta incidió al confirmar la denegatoria de la Administración respecto a la solicitud de beneficios de pensión por incapacidad a favor del Sr. Soto.
Como cuestión de umbral, precisa señalar que la Ley Núm. 447 de 15 de mayo de 1951, 3 LPRA see. 761, et seq., según enmendada, conocida como “Ley del Sistema de Retiro de los Empleados del Gobierno y la Judicatura” (Ley Núm. 447), particularmente de su Art. 17, 3 LPRA see. 777, revela palmariamente que al Administrador de los Sistemas de Retiro del Servicio Público le fue delegada la facultad de adjudicar, en el sentido lato de la palabra, toda reclamación hecha al amparo del referido estatuto y otras leyes de retiro, para, otorgar beneficios entre los que se encuentra la pensión por incapacidad ocupacional y no ocupacional. 3 LPRA sees. 769 y 770, respectivamente.
En lo aquí atinente, la Ley Núm. 447, supra, en su Art. 9, dispone que todo aquel trabajador que quede inhabilitado para desempeñar las funciones de su cargo debido a una incapacidad que se origine en el empleo o en *1002 el curso de éste, será acreedor de una anualidad por incapacidad ocupacional si:
“(a) Se recibiere suficiente prueba médica en cuanto a la incapacidad mental o física del participante conforme a los criterios normalmente aceptados en el área de la compensación por incapacidad que mediante reglamento fije el Administrador.
(b) El participante o el patrono, de acuerdo con los reglamentos de la Junta, notifique al Administrador con respecto a dicha incapacidad.
(c) Que el Fondo del Seguro del Estado determine que el accidente o enfermedad provino de cualquier función del trabajo o que sea inherentemente relacionado al trabajo o empleo.” (3 LPRA see. 769.) (Enfasis nuestro.)
En cuanto a la anualidad por incapacidad no ocupacional, el estatuto reza, en lo pertinente, como sigue:
“Todo participante que, teniendo por lo menos 10 años de servicios acreditados, se inhabilitare para el servicio, debido a un estado mental o físico y que por razón de ese estado estuviere incapacitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado tendrá derecho a una anualidad por incapacidad no ocupacional.” [...] 3 LPRA see. 770.
Para interpretar e implementar las normas antes citadas, el Sistema de Retiro aprobó el Reglamento General para la Concesión de Pensiones, Beneficios y Derechos, Reglamento Núm. 4930 de 25 de junio de 1993 (Reglamento 4930). La Regla 24 atiende lo relativo a la anualidad por incapacidad ocupacional y al respecto establece en su acápite 4 que:
“[S]i de la evidencia médica que consta en el expediente y conforme al listado de criterios médicos (“Adult Listings”)6 establecidos para determinar incapacidad y del análisis e investigación que realicen los técnicos en determinación de incapacidad designados por el Administrador, no se pudiese determinar con certeza la incapacidad, se le podrá requerir al participante que se someta a aquellos exámenes médicos adicionales que se entiendan necesarios para adjudicar en sus méritos la petición de beneficios por incapacidad. Los exámenes médicos adicionales serán realizados por médicos seleccionados por el Administrador. Recibidos los resultados de dichos exámenes, el médico asesor hará la determinación final sobre la incapacidad y someterá su recomendación al Administrador. Se considerará capacitado al participante, si no está total y permanentemente incapacitado e imposibilitado para cumplir los deberes de cualquier cargo que su patrono le hubiere asignado o para trabajar en cualquier empleo retribuido, con un sueldo o retribución por lo menos igual a la que esté percibiendo.” (Énfasis nuestro.)
Por su parte, la Regla 25.4 del Reglamento Núm. 4930, supra, que rige lo atinente a la pensión por incapacidad no ocupacional, provee un lenguaje equivalente al arriba citado, para así establecer los criterios que gobernarán la evaluación médica sobre las condiciones incapacitantes que aquejan al participante que reclama.
Ahora bien, para que un empleado del gobierno sea acreedor a una pensión por incapacidad ocupacional o no ocupacional bajo el Sistema, la incapacidad debe estar sustentada con suficiente prueba médica conforme a los criterios que mediante reglamento fije el Administrador y dicha prueba deberá reflejar que el participante está imposibilitado para desempeñar las funciones de su empleo y de cualquier otro empleo remunerativo. Sánchez v. A.S.R.E.G.J., 116 DPR 372, 376 (1985). Para tal determinación, la Administración examinará el expediente médico y el listado de los criterios médicos (“adult listings”), y tendrá la discreción de realizar investigaciones ulteriores a través de sus técnicos especializados.
Se trata aquí del ejercicio de una facultad delegada por la Asamblea Legislativa a la Administración, para recibir y aquilatar evidencia a los fines de establecer los derechos de un solicitante conforme los parámetros *1003 establecidos por la ley y los reglamentos pertinentes. Tal determinación dispone del asunto y de no ser modificada mediante reconsideración o revisión, será vinculante o lo que es igual, adjudica el asunto.
Aun y cuando en tal proceso la Administración no reciba prueba testifical contradictoria y dirima credibilidad, nada varia la finalidad vinculante del dictamen al final del proceso. Situación similar, por ejemplo, se presenta ante el foro judicial ante sentencia por la vía sumaria, mecanismo que imprime finalidad a un litigio tal cual lo haría una sentencia previa vista ordinaria. Tal sentencia sumaria que adjudica derechos luego de evaluar la prueba documental sometida no es menos sentencia, en términos de cosa juzgada, que una sentencia que se emite luego de una vista en la que se practicó prueba testifical y dirime credibilidad.
Nuestro más alto foro judicial ha señalado reiteradamente que se considerará incapacitada a una persona bajo el palio de la Ley Núm. 447, supra, si su incapacidad es de “tal naturaleza que le inhabilite para desempeñar las funciones de su empleo y de cualquier otro empleo remunerativo”. Sánchez v. A.S.R.E.G.J., 116 DPR 372, 376 (1985) (énfasis suplido). De tal forma, sobre el solicitante de la anualidad recae el onus probandi a los fines de establecer, con suficiente prueba médica: (1) que su incapacidad es total y permanente, y (2) que tal incapacidad lo inhabilita para continuar en el mismo u otro empleo remunerado.
Luego de un acucioso estudio del expediente ante nos, pudimos observar en la resolución aquí apelada que en la vista administrativa del 17 de junio de 2006, [1] la Junta observó y concluyó que el Sr. Soto:
“... entró a sala sin necesidad de ayuda. Contestó todas las preguntas de forma coherente y pertinente a su reclamación orgánica y emocional. Vive con su esposa y dos de sus cuatros hijos, los cuales son menores de edad. Al momento de la vista tenía 48 años de edad. Se desempeñó como Oficial de Corrección en la Administración de Corrección. Tenía licencia de conducir y conduce su automóvil de vez en cuando. Tuvo a cargo una brigada de confinados que hacían trabajos en las carreteras de Puerto Rico, en el turno de 7:00am a 3:00pm. Luego es cambiado a otro turno lo que le provoca descontrol. Ha estado hospitalizado en hospitales psiquiátricos de Cidra y Ponce. Su condición emocional se la trata con el Dr. Manuel Brignoni, cuyo tratamiento consiste de fármacos. Ha aumentado de peso, porque antes hacía ejercicios y ahora no tiene deseos de hacerlos. La presión a veces la tiene alta y veces lo contrario. Se la atiende un médico internista. Para el problema de la audición, ño está yendo a médico alguno. Su relación con la familia es buena, al igual que con sus vecinos.”
La evidencia médica del Sr. Soto evaluada por la Junta y obrante en el expediente, no demuestra que el padecer de una condición emocional de “Desorden Afectivo”, sea concluyente o suficientes para establecer que el Sr. Soto no pueda realizar otras labores remunerativas, que haga necesario acreditarle los beneficios de incapacidad de conformidad con las disposiciones aplicables de la Ley Número 447 de 15 de mayo de 1951.
Como hemos antes señalado, la jurisprudencia ha reiterado que la incapacidad a la que hace referencia la Ley Núm. 447, supra, y el Reglamento 4930, supra, ha de ser aquella que inhabilite a una persona “para desempeñar las funciones de su empleo y de cualquier otro empleo remunerativo”, lo que no necesariamente significa que ha de estar postrado en cama como un vegetal o recluido en un hospital psiquiátrico. Sánchez v. A.S.R.E.G.J., supra, a la pág. 376.
En síntesis, todos los errores imputados por el Sr. Soto, a la Administración como la Junta de Síndicos, en cuanto a que erraron al no considerar el hecho de que la Administración del Seguro Social lo declaró incapacitado, no cambia la ecuación jurídica en esta causa.
Primeramente, es menester señalar que aun cuando la Ley 447, antes citada, dispone que la Administración debe tomar en cuenta las determinaciones sobre incapacidad ocupacional hechas por el Seguro Social Federal, dichas determinaciones no son de por sí concluyentes para la Administración de Sistemas de Retiro. Por tanto, la recurrida puede hacer una evaluación independiente del asunto ante su consideración, debido a que los criterios *1004 para las respectivas determinaciones de incapacidad en cada estatuto son distintos.
La diferencia en criterios responde a los diferentes fines y propósitos públicos que cada agencia atiende. Cada ley existe una finalidad distinta y tiene sus propios criterios para resolver las peticiones que se traen a su amparo. El legislador también conoce de las distintas capacidades económicas de ambos sistemas lo que también repercute respecto a sus cubiertas. Tal dato de realidad no se puede obviar. Por tal razón, esas distintas agencias tienen la obligación de hacer determinaciones independientes sobre las solicitudes de pensiones por incapacidad y la determinación de una no es, ni puede ser, concluyente respecto a la otra. S.L.G. Afanador v. Roger Electric. Co., Inc., 156 DPR 651 (2002) (Opinión de conformidad del Juez Fuster Berlingeri).
Tal y como expusimos en Morales v. ADM de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura el 26 de septiembre de 2006, KLRA-2006-00522:
"... el Sistema de Retiro incorporó por referencia el Apéndice I de la reglamentación del Seguro Social, el cual contiene los criterios médicos que se utilizan para determinar incapacidad. No obstante, el Sistema de Retiro no adoptó en su reglamento el Apéndice II de la referida reglamentación federal, en el cual se incluyen los criterios médico-vocacionales a los que el recurrente hace referencia. Por otro lado, el Reglamento 4930, supra, aplicable a los hechos que esta causa informa tampoco contiene requisitos de tipo vocacional que tengan que ser considerados por la agencia al momento de determinar la incapacidad del solicitante de una anualidad por incapacidad, ocupacional o no ocupacional. De tal forma, el foro recurrido no venía obligado a ampliar el criterio rector en la determinación de incapacidad establecida en la Ley Núm. 447, supra, para evaluar elementos de índole vocacional como la preparación académica y la edad del peticionario.”
Conforme a ello, no resulta incompatible que al Sr. Soto se le hubiesen concedido los beneficios de incapacidad al amparo del Seguro Social Federal y que, a la vez, no sea acreedor a los beneficios que otorga la Ley del Sistema de Retiro, supra. Las disposiciones de toda ley o reglamento deben ser examinadas e interpretadas en conjunto y de modo que conduzcan a resultados armoniosos. Pueblo v. Zayas Rodríguez, 147 DPR 530 (1999).
“[E]s principio cardinal de hermenéutica que ‘[a]l interpretar una disposición específica de una ley los tribunales deben siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobarla y nuestra determinación debe atribuirle un sentido que asegure el resultado que originalmente se quiso obtener...’. Nuestra obligación fundamental en estos casos, es imprimirle efectividad a la intención legislativa, propiciando de esta forma la realización del propósito que persigue la ley.... Al interpretar y aplicar un estatuto hay que hacerlo teniendo presente el propósito social que lo inspiró...”. (Citas omitidas.)
Vázquez v. A.R.P.E., 128 DPR 513, 523 (1991).
Se trata de apreciaciones e interpretaciones efectuadas dentro del ámbito de la especialización y experiencias del ente administrativo. Rodríguez v. Guacoso Auto, 166 DPR 433 (2005). El recurrente no ha demostrado aquí que a la luz de su ley habilitadora la Administración actuó arbitraria, ilegalmente o en forma tan irracional que su actuación constituye un abuso de discreción. Camacho Torres v. AAFET, 168 DPR 91 (2006).
De la revisión médica de todo el expediente administrativo efectuada por la Junta de Retiro surge que aunque el recurrente sufre de varias condiciones de salud física y emocional, en su conjunto no alcanzan al grado de severidad para arribar al requisito reglamentario para ser acreedor a la pensión solicitada, conforme autorizada en ley.
Finalmente, concluimos que la agencia recurrida implemento correctamente la Ley 447, supra, al resolver que el Sr. Soto no cumple con los criterios necesarios para recibir una pensión por incapacidad ocupacional. En *1005 consecuencia, determinamos que ninguno de los errores señalados por el recurrente en el recurso de autos se cometió.
Dictamen
Conforme a lo antes expuesto, confirmamos la Resolución del 5 de mayo de 2009 de la Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura, aquí recurrida.
Lo acordó y manda el Tribunal y lo certifica la Secretaria.
Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones
ESCOLIO 2010 DTA 45

. Apéndice XXVII. Pág. 524.